Thomas **STOUTENBOROUGH, et al., Plaintiffs–Appellants,**

v.

**NATIONAL FOOTBALL LEAGUE, INC., et al., Defendants–Appellees.**

No. 94–3664.

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1995.

Decided July 14, 1995.

Christopher D. Kuebler, Southfield, MI (argued and briefed), for Thomas Stoutenborough, Self-Help for Hearing Impaired Persons.

Neil K. Roman (argued and briefed), Jeffrey G. Huvelle, Charles W. Logan, Covington & Burling, Washington, DC, for Nat. Football League, Inc.

Neil K. Roman, Washington, DC, Thomas P. Meaney, Jr. (briefed), Dan L. Makee, McDonald, Hopkins, Burke & Haber, Cleveland, OH, for Cleveland Browns Football Club, Inc.

Louis A. Colombo, Baker & Hostetler, Cleveland, OH (argued and briefed), for N.B.C., Inc., A.B.C., Inc., C.B.S., Inc.

Louis A. Colombo, Daniel P. Mascaro, Baker & Hostetler, Cleveland, OH, for W.E.W.S.-T.V.

Before: MARTIN and SILER, Circuit Judges; JOINER, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Thomas Stoutenborough and Self–Help for Hearing Impaired Persons, an unincorporated association of individuals with hearing impairments, appeal the district court order granting the defendants' motion to dismiss for failure to state a claim upon which relief can be granted. They argue that the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq., and other federal statutes apply to the National Football League's "blackout rule" and require the defendants to provide some "auxiliary aid or service" to assure that hearing impaired persons have equal access to some form of telecommunica-

* The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation.

tion of the affected football games in areas of public accommodation. For the following reasons, we affirm the judgment of the district court.

Stoutenborough is a hearing impaired resident of Cleveland, Ohio and the managing director of Self–Help for Hearing Impaired Persons. On September 15, 1993, Stoutenborough and Self–Help for Hearing Impaired Persons filed a class-action complaint in federal district court against the National Football League, Inc., the Cleveland Browns Football Club, Inc., National Broadcasting Company, Inc., American Broadcasting Company, Inc., Columbia Broadcasting Systems, Inc., W.K.Y.C.—T.V. 3, W.J.W.—T.V. 8, and W.E.W.S.—T.V. 5. The complaint, as subsequently amended, alleged that the National Football League's "blackout rule," which prohibits the live local broadcast of home football games that are not sold out seventy-two hours before game-time, violates the Americans With Disabilities Act of 1990, the Television Decoder Circuitry Act of 1990, the Communications Act of 1934, and the Rehabilitation Act of 1973.

On October 29, the National Football League and the Cleveland Browns Football Club filed a joint motion to dismiss. On November 12, National Broadcasting Company, American Broadcasting Company, Columbia Broadcasting Systems, W.K.Y.C.—T.V. 3, and W.E.W.S.—T.V. 5 filed another joint motion to dismiss. Finally, on December 7, W.J.W.—T.V. 8 also filed a motion to dismiss. The parties filed a stipulation pursuant to Fed.R.Civ.P. 41(a)(1), agreeing to voluntarily dismiss without prejudice defendants Columbia Broadcasting Systems and W.J.W.—T.V. 8 on May 9, 1994. On May 18, the district court granted the remaining defendants' motions to dismiss under Rule 12(b)(6). This timely appeal followed.

On appeal, Stoutenborough and Self–Help for Hearing Impaired Persons claim that their action is based "primarily and fundamentally" upon Title III of the Americans With Disabilities Act. In essence, they argue that the "blackout rule" unlawfully discriminates against them in a disproportionate way because they have no other means of accessing the football game "via telecommunication technology." Thus, they are denied the "substantially equal" access that they

claim the Americans With Disabilities Act requires. Stoutenborough and Self–Help for Hearing Impaired Persons also argue that the "service" at issue is the live television transmission of football games that are offered as services, benefits, or privileges in places of public accommodation.

■ At the outset, the defendants contend that the National Football League's "blackout rule" is not discriminatory: it applies equally to both the hearing and the hearing-impaired populations. We agree. The "blackout rule" prohibits both the hearing and the hearing-impaired from viewing "blacked out" home football games. As the defendants also point out, the fact that hearing individuals may be able to listen to a "blacked out" game, if it is broadcast by radio, is irrelevant, because the "blackout rule" neither reaches nor impacts radio broadcasting. Thus, the radio broadcast of "blacked-out" games does not render the "blackout rule" discriminatory, because the rule itself impacts only the **televised** broadcast of home football games. Moreover, with the advent of devices that make radio transmissions accessible to persons with hearing impairments, the hearing and the hearing-impaired populations attain equal footing as radio broadcasts become available to both.

■ The defendants also maintain that none of the statutes upon which Stoutenborough and Self–Help for Hearing Impaired Persons rely provides them a cause of action, in light of the plain language of those statutes. *E.g., United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Again, we agree. Title III of the Americans With Disabilities Act provides, in relevant part:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The district court correctly observed:

The discrimination against which the statute is directed is based on the practices or procedures of the public accommodation

itself which may deny the handicapped equal access to a service which that accommodation offers. The televised broadcast of football games is certainly offered through defendants, but not as a service of public accommodation. It is all of the services which the public accommodation offers, not all services which the lessor of the public accommodation offers which fall within the scope of Title III.

First, none of the defendants falls within any of the twelve "public accommodation" categories identified in the statute. 42 U.S.C. § 12181(7). Also, the prohibitions of Title III are restricted to "places" of public accommodation, disqualifying the National Football League, its member clubs, and the media defendants. As the applicable regulations clarify, a "place" is "a facility, operated by a private entity, whose operations affect commerce and fall within at least one of the" twelve "public accommodation" categories. 28 C.F.R. § 36.104. "Facility," in turn, is defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." *Id.*

■ In addition, the "service" that Stoutenborough and Self-Help for Hearing Impaired Persons seek to obtain—the televised broadcast of "blacked-out" home football games—does not involve a "place of public accommodation." Although a game is played in a "place of public accommodation" and may be viewed on television in another "place of public accommodation," that does not suffice. Moreover, the plaintiffs' argument that the prohibitions of Title III are not solely limited to "places" of public accommodation contravenes the plain language of the statute.

■ Titles I and II of the Americans With Disabilities Act are also inapplicable. Title I prohibits employment discrimination by a "covered entity," which is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). Title II prohibits discrimination by a "public entity," which is defined as any state and local government and its agencies and instrumentalities, as well as the National Railroad Passenger Corporation and any commuter authority. 42 U.S.C. §§ 12131(1) and 12132. By their terms then, these statutes are inapplicable to the factual situation before us.

■ Plaintiffs' argument that Title IV of the Americans With Disabilities Act, when read in conjunction with the Television Decoder Circuitry Act, is broad enough to protect hearing impaired individuals in the context of television broadcast services is similarly unavailing. The provisions of Title IV amend the Communications Act of 1934, to accommodate the hearing impaired in the provision of telephone services and to require closed captioning in certain types of television announcements. Section 401 of the Americans With Disabilities Act requires certain "common carriers" to provide telecommunications relay services. However, because the Title IV definition of "common carriers" is premised upon the Communications Act of 1934 definition at 47 U.S.C. § 153(h), it is clear that the "common carriers" referred to in Title IV do not include television broadcasters. *See* 47 U.S.C. § 225(a)(1). Section 402 requires television public service announcements that are produced or funded by a federal agency to include closed captioning. 47 U.S.C. § 611. Therefore, these provisions are irrelevant to the broadcast of National Football League games and the "blackout rule."

■ Moreover, the Communications Act of 1934, 47 U.S.C. § 151, et seq., which established the regulatory scheme governing the Federal Communications Commission, does not indicate congressional intent to apply the Americans With Disabilities Act to the "blackout rule." The "public interest" standard articulated in Section 309(a) of the Communications Act does not create a private cause of action. *E.g., Schnapper v. Foley,* 667 F.2d 102, 116–17 (D.C.Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 661 (1982). This standard does not incorporate the Americans With Disabilities Act's anti-discrimination requirement so as to prohibit the "blackout rule."

■ Finally, the Television Decoder Circuitry Act of 1990, which simply requires that all television sets manufactured in or used in the United States having thirteen-

inch screens and above, must "be equipped with built-in decoder circuitry designed to display closed captioned television transmission," 47 U.S.C. § 303(u), is inapplicable. None of the defendants meet the "manufacturer" criterion set forth in this statute.

We have accepted the facts alleged in the complaint as true, as we must under a 12(b)(6) motion to dismiss for failure to state a claim. *Nishiyama v. Dickson County*, 814 F.2d 277, 283 (6th Cir.1987). The law as we have reviewed it is clear. These facts simply do not establish the violation of a protected right. Therefore, we believe that the district court was correct in finding that Stoutenborough and Self–Help for Hearing Impaired Persons failed to state a cognizable claim. Accordingly, the judgment of the district court is AFFIRMED.