**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,**

v.

**CNA INSURANCE COMPANIES, Conti-
nental Casualty Company, and Conti-
nental Assurance Company, Defen-
dants–Appellees.**

No. 96–1304.

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1996.

Decided Sept. 27, 1996.

Samuel A. Marcosson, argued, E.E.O.C., Office of General Counsel, Washington, DC, Jean P. Kamp, John C. Hendrickson, E.E.O.C., Chicago, IL, for E.E.O.C.

Jeffrey S. Goldman, Allison Blakley, argued, Michael A. Paull, Fox & Grove, Chicago, IL, for CNA Ins. Companies, Continental Casualty Co., Continental Assur. Co.

Sally Dunaway, American Association of Retired Persons, Washington, DC, for American Association of Retired Persons.

Shelly R. Jackson, Leonard S. Rubenstein, Judge David L. Bazelon Center for Mental Health Law, Washington, DC, for Amicus Curiae Judge David L. Bazelon Center for Mental Health Law.

Arlene Mayerson Berkeley, CA, for Amicus Curiae Disability Rights Education and Defense Fund, Inc.

Vicki Laden, Claudia Center, Jennifer Middleton, Employment Law Center, San Francisco, CA, for Amicus Curiae Employment Law Center.

Catherine A. Hanssens, Lambda Legal Defense and Education Fund, New York City, for Amicus Curiae Lambda Legal Defense & Education Fund, Inc.

Ronald S. Honberg, National Alliance for the Mentally Ill, Arlington VA, for Amicus Curiae National Alliance for the Mentally Ill.

Edward Copeland, Cary LaCheen, New York Lawyers for the Public Interest, Inc., New York City, for Amicus Curiae New York Lawyers for the Public Interest, Inc.

Douglas S. McDowell, Ann Elizabeth Reesman, Ellen Duffy McKay, McGuiness & Williams, Washington, DC, for Amicus Curiae Equal Employment Advisory Council.

Before CUMMINGS, ESCHBACH, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In this case, we are asked to decide to what extent, if at all, the Americans with Disabilities Act of 1991 (ADA), 42 U.S.C. §§ 12101 *et seq.*, requires equality of treatment among disabilities in benefit plans. Specifically, the Equal Employment Opportunity Commission (EEOC) is attempting to bring an action on behalf of Cynthia Valladares–Toledo, who suffers from a long-term mental disability, to require the defendant companies to treat mental illness the same as physical illness under their long-term disability policies. Two hurdles lie between us and the central issue: possible mootness, and the EEOC's right to bring such an action on behalf of a former employee. We conclude that the action is not moot, but this is something of a Pyrrhic victory for the EEOC, for we also conclude that the district court correctly refused to enjoin the defendant companies from ceasing to pay benefits to Valladares–Toledo pending the EEOC's investigation of the matter.

## I

Valladares–Toledo worked for Continental Casualty Co. (a company within a group collectively known as "CNA Insurance Companies" and hereafter referred to as "CNA") for twenty-five years, from 1968 to 1993. When she started working there, she opted to participate in the disability policy CNA offered to its employees. The policy is funded exclusively through employee contributions, which Valladares–Toledo paid from every paycheck she received. In 1985, CNA modified the benefits payable under the policy in one important respect: whereas previously benefits could be received for all long-term disabilities until the employee reached age 65, after the amendment only physical disabilities continued to receive that treatment. Payments for mental and nervous disorders could thenceforth be made for only a two-year period.

In October 1992, Valladares–Toledo was diagnosed with severe depression and bipolar illness. For the next year, she received short-term disability payments from CNA, but when those payments ran out and she could not return to work, she was discharged, in keeping with CNA policy. Following her termination, she made a claim for benefits under CNA's long-term disability plan. Initially, she received a letter from the company dated November 16, 1993, indicating that she would begin receiving benefits under the plan, retroactive to October 7, 1993. That letter explained that her disability benefits were limited to a maximum period of 24 months, because her disability was the result of a mental or emotional disorder. About a month later, confusingly, Valladares–Toledo received a second letter, dated December 17, 1993, which purported to provide an overview of the benefits to which she was entitled under the long-term disability plan. It stated that her "LTD" income would continue until January 1, 2014, unless one of the events justifying termination under the plan occurred sooner. Ten months later, Valladares–Toledo's lawyer wrote to CNA asking the company to confirm the duration of his client's entitlement to long-term benefits. Retrenching, the company responded in a letter of October 24, 1994, that its advice in the December 17, 1993, letter had been in error, and that her benefits were limited to the 24 months originally mentioned.

That was the wrong answer, from Valladares–Toledo's perspective. On January 18, 1995, she filed a charge of discrimination with the EEOC alleging that CNA's long-term disability plan discriminated against employees with mental or nervous disorders, in violation of the ADA. The EEOC undertook an investigation of her case, and on October 11, 1995 (four days after the expiration of the 24–month period) it filed a complaint seeking a preliminary injunction that

would require CNA to continue paying benefits to Valladares–Toledo pending the outcome of the EEOC's investigation.

The district court denied the requested injunction on the ground that Valladares–Toledo, and hence the EEOC, had no standing to bring a claim under Title I of the ADA because Valladares–Toledo did not meet the statutory definition of a "qualified individual with a disability." See *EEOC v. CNA Insurance Companies, et al.,* 1996 WL 26879 (N.D.Ill.1996). The court noted for the record that it was satisfied that Valladares–Toledo had filed her EEOC charge within the 300–day limitations period that applies in Illinois. See 42 U.S.C. § 12117(a); *Lever v. Northwestern University,* 979 F.2d 552, 553 (7th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993). CNA claimed that the allegedly discriminatory act occurred with the November 16, 1993, letter, while Valladares–Toledo argued that the discrimination was not clear until the October 24, 1994, letter. At least for summary judgment purposes, the court agreed that the later date was the time when CNA finally established its official position, and thus that the charge was timely. CNA did not challenge this part of the district court's decision on appeal.

The EEOC filed its Notice of Appeal with this Court on February 8, 1996. On March 1, 1996, the District Director of the Chicago EEOC Office issued a determination that there is "reasonable cause to believe" that CNA's policy with respect to Valladares–Toledo's long-term disability benefits violated the ADA. On March 19, 1996, the District Director advised CNA's counsel, by letter, that the EEOC was terminating conciliation efforts. CNA promptly moved on March 22, 1996, to dismiss the appeal on grounds of mootness. We therefore have before us both the EEOC's appeal from the denial of the preliminary injunction and CNA's motion to dismiss.

## II

■ Because the question of mootness goes to our jurisdiction to entertain this appeal, we consider it first. In its moving papers, CNA claims that the EEOC's administrative process ended no later than March 19, 1996, which was the date when the District Director informed CNA that further conciliation efforts would be futile or nonproductive. It notes that § 706(f)(2) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(2), applies in ADA cases by virtue of § 107(a) of that Act, 42 U.S.C. § 12117(a), and that § 706(f)(2) gives the EEOC the power to obtain a preliminary injunction while it is considering a filed charge only "pending final disposition of such charge." The EEOC's papers in the district court, as well as its brief in this Court, request relief "during the pendency of the EEOC's administrative processing of the charge." Since the District Director has concluded there is nothing left to do, CNA reasons, there is no longer an administrative process to protect by means of an injunction, and this appeal is moot. It acknowledges that this approach leaves a gap of indeterminate length between the end of the administrative phase of a case and the beginning of the court phase (either in the EEOC's own action or by a complainant after receipt of a right to sue letter), during which no one would have the right to seek preliminary injunctive relief, but it dismisses this problem as a consequence of the statutory scheme.

The EEOC agrees that § 706(f)(2) permits it to seek interim relief pending the Commission's final disposition of a charge, but it takes issue with CNA's theory that the District Director's letter constitutes the necessary final act. Even though the investigation and conciliation phases have closed, the administrative process does not end until the Commission officially decides whether to file a suit or to issue a right to sue letter. See § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1). The EEOC also points to a number of judicial decisions that have held that the issuance of a right to sue notice is the final administrative step. See, *e.g., McGuire v. Aluminum Co. of America,* 542 F.2d 43, 45 (7th Cir. 1976); *Lacy v. Chrysler Corp.,* 533 F.2d 353, 356 (8th Cir.) (*en banc*), *cert. denied,* 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 (1976).

Nothing in CNA's arguments detracts from the fact that the EEOC has power to

take administrative actions in a case until the matter is formally closed or referred to litigation. While the EEOC may have chosen to delegate authority to issue right to sue notices to its District Directors and certain other staff members, it is the Commission in the final analysis that is authorized to take action on a charge (or to decide not to take action). See 29 C.F.R. § 1601.28. At oral argument, we asked the lawyer for the EEOC whether the Commission ever disagreed with a District Director's decision that conciliation efforts should be terminated, or if it ever sent a case back for more work at the district level, and we were assured that this does happen. Although it is not necessary to look beyond the statutory language, it is telling that the Commission actually exercises its power as final decisionmaker and does not simply rubber-stamp its District Directors' case recommendations. We see no reason why the end-point of the administrative process should be different from the starting point from which the 90-day period to file an action runs, after the EEOC has finished with a case. In the latter cases, the key moment is the issuance of the right to sue letter. See *McGuire v. Aluminum Co. of America, supra; Lacy v. Chrysler Corp., supra.* Here, too, for purposes of § 706(f)(2), "final disposition" of the charge does not occur until the Commission itself has acted either to bring a suit or to issue a right to sue letter. Since, as far as we are informed, neither the Commission nor the District Director has yet taken action on Valladares–Toledo's complaint, we find that this appeal is not moot, and we deny CNA's motion to dismiss. See 29 C.F.R. § 1601.28(c).

Even though this appeal comes from a denial of a preliminary injunction, and thus looks more like something within our jurisdiction under 28 U.S.C. § 1292(a)(1), as a practical matter the district court's rationale disposed of Valladares–Toledo's claim on the merits as well. The parties therefore relied on our jurisdiction over appeals from final judgments, 28 U.S.C. § 1291. We agree that this appeal comes from the final judgment of the district court on the Valladares–Toledo matter. The district court's decision that Valladares–Toledo had no standing to pursue

this claim under the ADA finally disposes of all issues in the case. See *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373–74, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981); *Otis v. City of Chicago,* 29 F.3d 1159, 1163, 1166–67 (7th Cir.1994) *(en banc).* Furthermore, the district court entered a final judgment, pursuant to Federal Rules of Civil Procedure 58, making the order final and immediately appealable.

Because the EEOC brought this action pursuant to § 12117 of the ADA, which incorporates by reference § 706(f)(2) of Title VII, 42 U.S.C. § 2000e–5(f)(2), to enforce the rights of Valladares–Toledo, we must determine whether Valladares–Toledo had a right to relief under the statute. (The parties have referred to this as her "standing to sue," but we think the real question here is whether the statute reaches this kind of claim. The EEOC is entitled to litigate this issue on her behalf.) Valladares–Toledo was a totally disabled former employee who was complaining about the different levels of benefits afforded in the employer's long-term disability plan. The ADA provides that:

> no covered entity shall discriminate against a qualified individual with a disability because of the disability of such an individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that [the] individual holds or desires." 42 U.S.C. § 12111(8). See *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666 (7th Cir.1995). The question, then, is how a person who is no longer able to hold an "employment position" fits within this definition.

The EEOC's principal theory is, at best, strained. It asserts that Valladares–Toledo's "employment position" *vis-à-vis* CNA is now that of "disability benefit recipient." Because CNA imposes no job-related duties on any of the beneficiaries of its long-term dis-

ability plan, Valladares–Toledo by definition can perform the essential functions of her position: there are none, other than collecting the benefit checks for as long as she is entitled to do so. It also argues more plausibly that former employees can invoke the protections of § 102 of the ADA, by analogy to the right of former employees to bring a Title VII action for post-termination retaliation. See *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881 (7th Cir.1996); *Robinson v. Shell Oil Co.,* 70 F.3d 325, 331 & n. 2 (4th Cir.1995) (*en banc*), *cert. granted,* —— U.S. ——, 116 S.Ct. 1541, 134 L.Ed.2d 645 (1996); *Charlton v. Paramus Board of Education,* 25 F.3d 194, 198–200 (3d Cir.1994).

We need not tarry long on the argument that the status of "benefit recipient" fits within the definition of someone filling an "employment position," as required by 42 U.S.C. § 12111(8). An "employment position" is a job. Someone might be applying for a job, in which case § 102 commands that job application procedures and hiring procedures must not be discriminatory. Or that person might be a current employee, in which case § 102 protects her against discrimination in advancement, discharge, compensation, job training, and all other terms, conditions, and privileges of employment. One of those terms, conditions, or privileges of employment may be a pension plan, but there is no claim here that CNA discriminated on the basis of disability in offering its pension plan to anyone. It did not charge higher prices to disabled people, on the theory that they might require more in benefits. *Cf. General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *City of Los Angeles, Dept. of Water and Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). Nor did it vary the terms of its plan depending on whether or not the employee was disabled. All employees—the perfectly healthy, the physically disabled, and the mentally disabled—had a plan that promised them long-term benefits from the onset of disability until age 65 if their problem was physical, and long-term benefits for two years if the problem was mental or nervous. This may or may not be an enlightened way to do things, but it was not discriminatory in the usual sense of the

term. See generally *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *Modderno v. King,* 82 F.3d 1059 (D.C.Cir.1996).

Valladares–Toledo raises a different kind of discrimination claim, more grist for the ERISA mill or the national health care debate than for the ADA. She claims that the plan discriminates against employees who *in the future* will become disabled due to mental conditions rather than physical conditions; their present dollars (unbeknownst to them) are buying only 24 months of benefits, instead of benefits lasting much longer. However this is dressed up, it is really a claim that benefit plans themselves may not treat mental health conditions less favorably than they treat physical health conditions. Without far stronger language in the ADA supporting this result, we are loath to read into it a rule that has been the subject of vigorous, sometimes contentious, national debate for the last several years. Few, if any, mental health advocates have thought that the result they would like to see has been there all along in the ADA. This is well-illustrated by the debate over a proposed amendment to the Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104–191, 110 Stat.1936 (1996). The amendment, which was defeated before final passage of the bill, would have required parity of coverage for mental and physical conditions. See 142 Cong. Rec. S9477–02 (daily ed. Aug. 2, 1996) (statement of Sen. Heflin). This debate reinforces our conclusion based on the language of the ADA that the issue of parity among physical and mental health benefits is one that is still in the legislative arena.

Other courts have come to similar conclusions when faced with claims about plans that differentiate among types of benefits. The Eleventh Circuit, for example, recently ruled that a former employee has no standing to challenge as discriminatory under the ADA a limitation on AIDS-related medical expenses in the company's health benefits plan, which the employee still had by virtue of the continuation coverage available under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). *Gonzales v. Garner Food Services, Inc.,* 89 F.3d 1523 (11th Cir.1996).

Similarly, the Eighth Circuit concluded that the plaintiff before it was not an "otherwise qualified" handicapped individual for purposes of § 504 of the Rehabilitation Act, 29 U.S.C. § 794, because she was no longer able to perform her job. *Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768 (8th Cir.1987). See also *Esfahani v. Medical College of Pennsylvania,* 919 F.Supp. 832 (E.D.Pa.1996). Because Valladares–Toledo no longer has an "employment position" with CNA, nor is she an applicant, she has no claim under § 102. (Our ruling here is limited to subchapter I of the ADA, which addresses employment; different considerations come into play when discrimination based on ability is alleged for programs or services addressed by other subsections of the Act.)

■ We are also unpersuaded by the EEOC's alternative position, that Valladares–Toledo's status as a former employee gives her a right to relief, by analogy to our decision in *Veprinsky, supra.* In that case, we made clear that the law in this Circuit permits former employees who are suffering retaliation for protected activity while they were employees to bring an action under Title VII's anti-retaliation provisions. See 87 F.3d at 890–91. When the employer waits to retaliate until after the employee is discharged, and only then (for example) begins a campaign of bad-mouthing or harassment, the former employee may sue the former employer under § 704(a) for retaliatory conduct with a nexus to her employment. In Valladares–Toledo's case, however, nothing happened that discriminated against her during the time she was working at CNA. The only thing that occurred was CNA's 1985 decision to reduce the long-term benefits available to all of its employees for mental health problems. While in *Veprinsky* the protected interest of the former employee arose during the period of employment, it did not here.

We therefore conclude that under the circumstances of this case, Valladares–Toledo suffered no discrimination cognizable under Title I of the ADA as a result of the distinction in CNA's long-term disability plan between mental health benefits and other ben-efits. The judgment of the district court dismissing the EEOC's action is

AFFIRMED.