**Gary BROWN, Plaintiff,**

v.

**1995 TENET PARAAMERICA BICYCLE CHALLENGE, et al., Defendants.**

No. 95 C 5631.

United States District Court,
N.D. Illinois,
Eastern Division.

March 13, 1997.

---

14. Mr. Hill's motion for leave to file motion for summary judgment or for sanctions is denied.

Alan M. Goldstein, Law Office of Alan M. Goldstein, Glenview, IL, for Plaintiff.

John K. DeVine, Cassidy, Schade & Gloor, Chicago, IL, Donald H. Mullins, Badgley–Mullins Law Group, Seattle, WA, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Gary Brown is a cyclist whose lower extremities are paralyzed. Therefore, he rides a specially designed tricycle. In September 1994, he registered to participate in the 1995 Tenet ParaAmerica Bicycle Challenge ("ParaAmerica"), which was a cross-country bicycle tour for both disabled and "able-bodied" riders. After the defendants prevented him from participating in the ParaAmerica because of his refusal to wear a bicycle helmet, Mr. Brown filed suit alleging that the defendants violated his rights under The Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("Rehab Act"), and Illinois law. The defendants have filed a motion pursuant to Rule 12(b)(6), Fed.R.Civ. P., to dismiss Mr. Brown's complaint. The motion is granted in part.

### Americans with Disabilities Act

■ Title III of the ADA has a general non-discriminatory rule which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (1994). The defendants argue that they are not a "place of public accommodation" within the meaning of the statute because the bicycle road tour which they sponsored did not involve a place of public accommodation owned, operated or leased by them.

The ADA's regulations define a "place of public accommodation" as a "facility, operated by a private entity, whose operations affect commerce and fall within at least one of the following categories...." 28 C.F.R. § 36.104 (1995). The regulations list twelve categories of facilities, ranging from hotels to gymnasiums to insurance offices. 42 U.S.C. § 12181(7) (1994); 28 C.F.R. § 36.104 (1995). "Facility" is defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots or other real or personal property, including the site where the building, property, structure, or equipment is located." *Id.*

Despite these definitions, it is not always clear whether a plaintiff is within the protection of Title III. Mr. Brown relies on *Carparts Distrib. Ctr. v. Automotive Wholesaler's Ass'n,* 37 F.3d 12, 19 (1st Cir.1994), in which the Court held that, at least for purposes of a motion to dismiss, Title III of the ADA covered businesses offering goods and services for sale to persons without disabilities, regardless of whether persons physically enter the defendant's premises. 37 F.3d at 19–20.

Most courts, however, have read the word "facility" literally, concluding that the focus of a claim under Title III of the ADA must be "the 'place' of public accommodation." *Stoutenborough v. National Football League,* 59 F.3d 580, 583 (6th Cir.1995). This analysis compares the defendant with the twelve categories of public accommodations listed in the ADA; if the defendant is not sufficiently analogous to one of the listed public accommodations, then the defendant is not deemed to be a public accommodation. *See Elitt v. U.S.A. Hockey,* 922 F.Supp. 217, 223 (E.D.Mo.1996); *Treanor v. Washington Post Co.,* 826 F.Supp. 568, 569 (D.D.C.1993). This approach has been applied to newspaper columns, *Treanor,* 826 F.Supp. at 569, youth hockey leagues, *Elitt,* 922 F.Supp. at 223, and professional sports leagues and teams. *Stoutenborough,* 59 F.3d at 583. I conclude that the latter approach is correct. Although the ADA certainly was enacted with the intention of prohibiting discrimination against persons with disabilities, the language in question refers to "facility" which appears clearly to be defined as a physical structure.

■ The present defendants consist of an association, an organizing group, and the Pa-

raAmerica challenge itself. The defendants do not fall within any of the twelve specific categories described in section 12181(7) of the ADA. They are not analogous to any of the public accommodations listed in the statute. The defendants are closer in identity to a youth hockey or professional football league, which have not been found to be public accommodations, in that they are umbrella groups that organized an event. Mr. Brown does not allege that he was denied access to a physical place. He alleges that he was denied a chance to participate in the ParaAmerica. That allegation does not meet the definition of public accommodation. *See Elitt,* 922 F.Supp. at 223.

■ Moreover, the service the defendants offered, i.e. the chance to participate in the ParaAmerica, has no connection to a place of public accommodation, as that term is defined under Title III. The tour itself took place on public roads which are not places of public accommodation because they are not operated, owned or leased by a private entity. *See Sandison v. Michigan High Sch. Athletic Ass'n,* 64 F.3d 1026, 1036 (6th Cir. 1995); 28 C.F.R. § 36.104.[1] In addition, the mere fact that the service was organized at the defendants' offices, which presumably are places of public accommodation, is not a sufficient link to support application of the ADA. *See Stoutenborough,* 59 F.3d at 583. Since defendants are not public accommodations within the meaning of Section 12181(7) of the ADA, Mr. Brown's ADA claim is dismissed.

### Rehabilitation Act of 1973

Mr. Brown is also pursuing a claim under Section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794 (1994). To state a claim under this Act, a plaintiff must allege that: (1) he is a disabled person; (2) he is "otherwise qualified" to participate in the subject program or activity; (3) the sole basis for discrimination is his disability; and (4) the subject program or activity receives federal financial assistance. *Gazouski v. City of Belvidere,* No. 93–C–20157, 1993 WL 515858, at *3, (N.D.Ill.Dec.13, 1993). The defendants argue that Mr. Brown's claim fails to satisfy elements (3) and (4). I disagree.

■ With respect to element (3), the defendants claim that Mr. Brown was not discriminated against solely on the basis of his disability. They point to the fact that all riders were required to wear the same helmet, and say the only reason that Mr. Brown could not wear the helmet was due to the design of his tricycle, not because of his disability. In his complaint, however, Mr. Brown alleges that he could not wear the helmet due to *both* the nature of his disability and the design of his tricycle. Compl. ¶¶ 42, 43. Furthermore, in opposing this motion, Mr. Brown asserts a novel argument that the design of his tricycle is "inextricably linked" to his disability. Given these statements, I cannot say at this stage in the proceedings that Mr. Brown can prove no set of facts that would support his Rehabilitation Act claim.

■ The defendants also contend that the ParaAmerica did not receive federal funding. Defendants support this contention with two affidavits from individuals affiliated with the defendants which state that none of the defendants receive or have received federal funding. Because these materials fall outside of the pleadings, I cannot consider them on this motion. *Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988). Accordingly, Mr. Brown's Rehabilitation Act claim will not be dismissed.

### Intentional Infliction of Emotional Distress

■ Under Illinois law, a claim for intentional infliction of emotional distress must

---

**1.** Mr. Brown's arguments on this point are unpersuasive. The regulations do use the word "roads" as part of the definition of facility, 28 C.F.R. § 36.104, but that does not mean all roads are places of public accommodation. Rather, the Court understands this definition to mean that any roads or walkways or other means of egress which are connected to a building or other structure are included in the definition of facility. This interpretation is the only one that makes sense in light of the fact that a public accommodation must be owned or operated by a private entity, and most roads are owned or operated by public entities.

Furthermore, I do not agree that defendants' "use" of public accommodations brings them within the ambit of Title III of the ADA. The statute provides that the private entity must own, lease or operate a place of public accommodation, not merely make use of one. 42 U.S.C. § 12182(a).

contain the following allegations: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct would cause severe emotional distress or knew that a high probability existed that his conduct would cause severe emotional distress; and (3) the defendant's conduct actually caused severe emotional distress to the plaintiff. *Doe v. Calumet City,* 161 Ill.2d 374, 392, 641 N.E.2d 498, 506, 204 Ill.Dec. 274, 283 (1994). Illinois courts have given a narrow interpretation to this tort. *Carr v. Village of Richmond,* No. 96 C 50203, 1996 WL 663921, at *8 & n. 9 (N.D.Ill. Nov.15, 1996) (use of physical force by police which included throwing plaintiff against a car did not constitute extreme and outrageous conduct). I do not think Illinois courts would allow a claim for intentional infliction of emotional distress under the facts alleged.

Although a power relationship between two parties can give rise to extreme and outrageous conduct, that relationship usually is one relating to the health, safety or livelihood of an individual. *See Calumet City,* 641 N.E.2d at 507, 204 Ill.Dec. at 283, . No such relationship is involved in this case.[2] Even if the defendants' requirement was discriminatory as to Mr. Brown, that conclusion would not alter the essential nature of the conduct which was no more than enforcement of a condition for participation in a bike tour. Hence, Mr. Brown's emotional distress claim will be dismissed.

### *Breach of Contract*

Mr. Brown alleges that he and the defendants entered into a contract when, in response to an advertisement, he registered to participate in the ParaAmerica. The defendants claim that no such contract existed, or, if it did, that it had an implied term requiring that Mr. Brown wear a helmet. On these grounds the defendants argue that Mr. Brown has not stated a claim for breach of contract. I am not persuaded by these arguments.

■ Ordinarily, an advertisement does not constitute an offer for a contract. *Steinberg v. Chicago Med. Sch.,* 69 Ill.2d 320, 330, 371 N.E.2d 634, 639, 13 Ill.Dec. 699, 704 (1977). Instead, "it constitutes an invitation to deal on the advertised terms. Only when the merchant takes the money is there an acceptance of the offer to purchase." *Id.* Therefore, a response to an advertisement, not the advertisement itself, is an offer although the advertisement may set the framework and terms of the ultimate contract. *Id.*

■ The initial advertisement of the defendants soliciting riders is not part of the pleadings. Accordingly, I cannot consider it for purposes of deciding this motion. Furthermore, I do not know any of the terms or conditions of the offer, which was the registration foam sent by Mr. Brown. Although the defendants did send a memorandum to the registered riders prior to the race, I cannot conclude at this juncture whether that memorandum, which contained a waiver discussing the helmet requirement and the limitations on liability, constituted an acceptance or a modification of the offer made by Mr. Brown. The complaint alleges that a contract existed and that it was breached by the defendants. Based solely on the pleadings, that claim will not be dismissed.

### *Conclusion*

The defendants' motion to dismiss Mr. Brown's ADA and intentional infliction of emotional distress claims is granted, and these claims are dismissed with prejudice. The defendants motion to dismiss is denied with respect to the remaining claims.

■

---

2. *Woolfolk v. Duncan,* 872 F.Supp. 1381 (E.D.Pa. 1995), cited by Mr. Brown, is inapposite. The plaintiff in *Woolfolk* was an individual who had been denied medical treatment due to his status as HIV-positive. Mr. Brown is an individual who was denied an opportunity to participate in a bike tour allegedly due to his disabled status. The two situations are not analogous.