**Roger D. ERWIN, Plaintiff,**

v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY and McHale, Cook & Welch, P.C., Defendant.**

**No. IP 97–703 C B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

March 17, 1998.

Kaye G. Burson, Rutledge & Rutledge, Memphis, TN, Steven A. Spence, Indianapolis, IN, for Plaintiff.

Mark W. Ford, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, IN, Shawn E. Hanson, Pillsbury Madison & Sutro, San Francisco, CA, Michael R. Maine, Baker & Daniels, Indianapolis, IN, Michael A. Conley, Pillsbury Madison & Sutro, Washington, DC, for Defendant.

## ENTRY GRANTING DEFENDANT NORTHWESTERN'S MOTION TO DISMISS

BARKER, Chief Judge.

Defendant Northwestern Mutual Life Insurance Company ("Northwestern") moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Northwestern asserts that (1) Count I of Plaintiff's complaint should be dismissed because it is preempted by ERISA; (2) Count II of Plaintiff's complaint should be dismissed because Plaintiff failed to exhaust state and federal administrative remedies, Plaintiff's state law claim is preempted by ERISA, and he has not alleged conduct that is actionable under Title VII; (3) Count III of Plaintiff's complaint should be dismissed because Plaintiff is not a "qualified individual with a disability" and Northwestern is not a proper defendant; (4) Count IV of Plaintiff's complaint should be dismissed because Plaintiff failed to exhaust administrative remedies under ERISA and (5) Count V of Plaintiff's complaint should be dismissed because Plaintiff's common law tort claims are preempted by ERISA and Plaintiff has not pled cognizable state law claims. Northwestern also contends that Counts I, II, IV and V of Plaintiff's complaint should be dismissed on the ground that Plaintiff has abandoned those claims. For the reasons set forth below, the Court *grants* Northwestern's motion to dismiss as to all counts of Plaintiff's complaint as to Northwestern.[1]

### STATEMENT OF FACTS

Plaintiff, Roger D. Erwin ("Plaintiff"), is a resident of New Palestine, Indiana. *See* Compl. ¶ 2. Defendant Northwestern Mutual Life Insurance Company ("Northwestern") is an insurance company doing business in the State of Indiana, with its principal office in Portland, Oregon. *See* Compl. ¶ 3. Defendant McHale, Cook & Welch, P.C. ("McHale") is a law firm operating as a professional corporation organized and existing under the laws of the State of Indiana, with its princi-

pal place of business in Indianapolis, Indiana. *See* Compl. ¶ 4.

Plaintiff was a lawyer employed by McHale from 1982 until June 2, 1994. *See* Compl. ¶ 13. McHale offered Plaintiff, as an employee, the opportunity to receive coverage under its long-term disability plan through a policy with Northwestern. *See* Compl. ¶ 12. The long-term disability plan provides separate policy limits for mental and physical disabilities. *See* Compl. ¶¶ 22–23. Plaintiff suffers from severe chronic depression that renders him totally disabled. *See* Compl. ¶ 25. Plaintiff became disabled on or about June 2, 1994 and received disability benefits under the long-term disability plan for twenty-four months after he became eligible for benefits, from August 31, 1994 through August 30, 1996. *See* Compl. ¶¶ 13, 19. After McHale stopped paying Plaintiff's disability benefits, Plaintiff filed this action.

Plaintiff alleges that Defendants Northwestern and McHale discriminated against him on the basis of his mental disability and breached Plaintiff's contract for disability benefits, asserting claims for breach of contract, violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), violation of the Employee Retirement Income Security Act of 1974, 20 U.S.C. § 1001 *et seq.* ("ERISA") and violation of the Indiana Civil Rights Law, Ind. Code § 29–9–1–1 *et seq.*

### STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12(b)(6), we must determine whether the plaintiff's complaint states a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). The Court must examine the sufficiency of the plaintiff's complaint, not the merits of his lawsuit. *See Triad Assocs. v. Chicago Housing Auth.,* 892 F.2d 583, 585 (7th Cir.1989). "Accordingly, the motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove

---

1. In Plaintiff's response to Northwestern's motion to dismiss, Plaintiff requests oral argument. However, the Court finds oral argument unnecessary and will address the motion to dismiss based on the complaint and the briefs that the parties have submitted. Thus, Plaintiff's request is denied.

any facts that would support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993) (citation omitted); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Jones v. General Elec. Co.,* 87 F.3d 209, 211 (7th Cir.1996). When reviewing a motion to dismiss, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 165, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Dawson v. General Motors Corp.,* 977 F.2d 369, 373 (7th Cir.1992).

### COUNTS I, II, IV AND V; PLAINTIFF'S BREACH OF CONTRACT, TITLE VII, ERISA AND INDIANA CIVIL RIGHTS CLAIMS

■ Northwestern moves to dismiss Counts I, II, IV and V of Plaintiff's complaint, asserting that Plaintiff abandoned his claims for breach of contract and violation of Title VII, ERISA and the Indiana Civil Rights Law when he failed to respond to Northwestern's motion to dismiss those claims. *See* Def. Rep. Br. at 1. As Northwestern correctly contends, Plaintiff argues only his ADA claims in his response brief. *See* Plaint. Resp. Br. at 14. Thus, we find that Plaintiff has in fact abandoned his other non-ADA claims, and we must *grant* Northwestern's motion to dismiss Counts I, II, IV and V of the complaint as to Northwestern.

### COUNT III; PLAINTIFF'S ADA CLAIMS

Northwestern also moves to dismiss Plaintiff's claims under the ADA. First, Northwestern argues that Plaintiff's claim under Title I of the ADA fails because Plaintiff is not a "qualified individual with a disability," an essential element of such a claim, and Northwestern is not a proper defendant. *See* Def. Mot. Br. at 9–12. Second, Northwestern contends that the Court should dismiss Plaintiff's claim under Title III of the ADA because Northwestern is not a "place of public accommodation," Title IV's "safe harbor" provision exempts Northwestern from Title III liability, and the plan in question provided equal access to disabled and non-disabled employees. *See* Def. Rep. Br. at 5–6. We will address Northwestern's arguments in turn.

### Title I of the ADA

Title I of the ADA provides in relevant part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). The term "qualified individual with a disability" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

■ Northwestern contends that Plaintiff is not a "qualified individual with a disability" under the ADA, citing the Seventh Circuit's decision in *EEOC v. CNA Ins. Co.,* 96 F.3d 1039 (7th Cir.1996). The plaintiff in *EEOC v. CNA* was a former employee who was totally disabled by mental depression and bipolar illness. *See EEOC v. CNA,* 96 F.3d at 1041. The plaintiff received long-term disability benefits for two years, the policy limit for mental or emotional disability. When the payments stopped, the plaintiff filed suit against her former employer for discrimination in the levels of benefits provided for mental and physical disabilities under the long-term disability plan. *See EEOC v. CNA,* 96 F.3d at 1041. On appeal from the trial court's dismissal of the plaintiff's complaint, the Seventh Circuit held that a long-term disability benefit recipient is not a "qualified individual with a disability" for purposes of the ADA. *See EEOC v. CNA,* 96 F.3d at 1043–1045. The court asserted:

> We need not tarry long on the argument that the status of "benefit recipient" fits within the definition of someone filling an "employment position," as required by 42

U.S.C. § 12111(8). An "employment position" is a job.

*EEOC v. CNA,* 96 F.3d at 1043–1045. The court found that a plaintiff who is totally disabled cannot recover under Title I because such plaintiff is, by definition, unable to perform the essential functions of his job. *See EEOC v. CNA,* 96 F.3d at 1045.

Similar to the plaintiff in *EEOC v. CNA,* Plaintiff here is totally disabled, for he asserts that he "suffers from chronic severe major depression of a physical origin causing a chemical imbalance which renders him totally disabled." Compl. ¶ 25. However, Plaintiff argues that "the term 'employment position' is different from the term 'job,'" and "thus, the definition of 'qualified individual with a disability' is flexible." Plaint. Resp. Br. at 5. Plaintiff contends that he may recover as a "qualified individual" because of his status as a "benefit recipient." *See* Plaint. Resp. Br. at 5. Unfortunately for Plaintiff, this precise argument was addressed and rejected in *EEOC v. CNA,* as discussed above.

Plaintiff also contends that the decision in *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997), in which the Supreme Court determined that former employees may have a cause of action for retaliation claims under Title VII, warrants a similar application to former employees under Title I of the ADA.[2] *See* Plaint. Resp. Br. at 5–6. In other words, Plaintiff asserts that a former employee should be considered a "qualified individual with a disability" under the ADA in the same way that a former employee is considered an "employee" for the purpose of Title VII retaliation claims. *See* Plaint. Resp. Br. at 6. However, the Seventh Circuit also expressly rejected this argument in *EEOC v. CNA.* The court explained as follows:

> [T]he law in this Circuit permits former employees who are suffering retaliation for protected activity while they were employees to bring an action under Title VII's anti-retaliation provisions. When the employer waits to retaliate until after the employee is discharged ... the former employee may sue the former employer under

§ 704(a) for retaliatory conduct with a nexus to her employment. In [plaintiff]'s case, however, nothing happened that discriminated against her during the time she was working at CNA. The only thing that occurred was CNA's 1985 decision to reduce the long-term benefits available to all of its employees for mental health problems. While in Veprinsky the protected interest of the former employee arose during the period of employment, it did not here.

As Northwestern correctly argues, the Seventh Circuit's holdings in *EEOC v. CNA* are controlling as to Plaintiff's arguments regarding his status as a "benefit recipient" and "former employee," and we find therefore that Plaintiff is not a "qualified individual with a disability" entitled to recover under Title I of the ADA. Accordingly, we *grant* Northwestern's motion to dismiss Plaintiff's Title I ADA claim. Because we find Plaintiff has no cognizable claim under Title I, we need not reach Northwestern's contention that it is not a proper defendant.

### *Title III of the ADA*

Northwestern also moves to dismiss Plaintiff's claim under Title III of the ADA, arguing that (1) Northwestern is not a "place of public accommodation" for purposes of the statute, (2) Northwestern is exempt from Title III liability under the "safe harbor" for insurance companies in Title IV and (3) Northwestern's policy was accessible to disabled and non-disabled employees equally. *See* Def. Rep. Br. at 5–6. Title III of the ADA, entitled "Public Accommodations and Services Operated by Private Entities," provides in relevant part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

---

**2.** The Seventh Circuit recognized a former employee's standing to sue under Title VII's anti-retaliation provisions prior to *Robinson* in *Vep-*

*rinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 886 (7th Cir.1996).

42 U.S.C. § 12182(a). The list of private entities that are considered places of public accommodation is set forth in § 12181(7):

(A) an inn, hotel, motel, or other place of lodging . . .;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

■ Northwestern as an insurance disability plan is not expressly among the entities in the above-detailed list. Further, Northwestern asserts that it is not a place of public accommodation, subject to Title III, directing the Court to the Sixth Circuit's decision in *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006 (6th Cir.1997). *See* Def. Resp. Br. at 6. The facts in *Parker* are startlingly similar to the immediate case. The plaintiff in *Parker* participated in a long-term disability plan provided by her employer under which mentally disabled individuals received only twenty-four months of benefits, while physically disabled individuals received benefits until age sixty-five. *See Parker*, 121 F.3d at 1008. The plaintiff asserted claims against both her employer and the insurance company administering the disability benefit plan under both Title I and Title III of the ADA. The trial court granted summary judgment in favor of the defendants as to all of the plaintiff's claims, but the appellate court reversed the trial court's ruling on the Title III claim, concluding that the disability benefit plan in question was a good or service provided by a place of public accommodation. *See Parker*, 121 F.3d at 1009. The Sixth Circuit granted the defendant insurance company's motion for rehearing *en banc* on the plaintiff's Title III claim and affirmed the district court, holding that Title III does not apply to a long-term disability plan provided by an employer and administered by an insurance company. *See Parker*, 121 F.3d at 1014.

The *Parker* court concluded that "a benefit plan offered by an employer is not a good offered by a place of public accommodation." *See Parker*, 121 F.3d at 1010. First, the court determined that a place of public accommodation is a physical place. *See Parker*, 121 F.3d at 1010. Examining the statutory language, the court concluded that every entity listed in § 12181(7) as a public accommodation is a physical place open to access by the public. *See Parker*, 121 F.3d at 1010, 1014. The court also reviewed the applicable regulations, which define "place of public accommodation" as "a facility, operated by a private entity, whose operations affect commerce and fall within at least one of the [enumerated] categories" (as listed in § 12181(7)) and define "facility" as:

all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located.

28 C.F.R. § 36.104. The court held that the plain meaning of the statutory text and regulations is that a place of public accommoda-

tion is a physical place. *See Parker*, 121 F.3d at 1010.

Second, the court found that the "good" in question, the employer-provided benefit plan, was not a good offered to the public by a place of public accommodation. *See Parker*, 121 F.3d at 1011. The court found compelling the fact that the plaintiff obtained the benefit plan through her employer and that this plan was not accessible to the general public, concluding, "There is, thus, no nexus between the disparity in benefits and the services which MetLife offers to the public from its insurance offices." *Parker*, 121 F.3d at 1011. In support of its determination, the *Parker* court cited the Department of Justice's explanation of the treatment of wholesalers under Title III. *See Parker*, 121 F.3d at 1011–1012. The Department of Justice explained:

> The Department intends for wholesale establishments to be covered ... as places of public accommodation except in cases where they sell exclusively to other businesses and not to individuals .... However, if the wholesale company operates a road side stand where its crops are sold to the public, the road side stand would be a sales establishment covered by the ADA
> ....
> Of course, a company that operates a place of public accommodation is subject to this part only in the operation of that place of public accommodation. In the example given above, the wholesale produce company that operates a road side stand would be a public accommodation only for the purposes of the operation of that stand.

*Parker*, 121 F.3d at 1012 (quoting 28 C.F.R. pt. 36, app. B at 604 (1996)). Similar to wholesalers, the *Parker* court determined, insurance offices are places of public accommodation for purposes of Title III only in the provision of goods and services to the public, not in the sale of long-term disability benefit plans to employers. *See Parker*, 121 F.3d at 1012. Thus, the Sixth Circuit concluded that such benefit plans are not a good offered by a place of public accommodation and are not subject to Title III. *See Parker* 121 F.3d at 1012.

In reaching its decision, the *Parker* court expressly disagreed with the First Circuit's opinion in *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Assoc. of New England, Inc.*, 37 F.3d 12 (1st Cir.1994). *Carparts* involved an employer-provided health benefit plan that capped benefits for AIDS-related illnesses at $25,000, while lifetime benefits for other illnesses were $1,000,-000. *See Carparts*, 37 F.3d at 14. The estate of the decedent, an employee who suffered from AIDS, sued the administrator of the health benefit plan (the insurer) under both Title I and Title III of the ADA. The First Circuit held that places of public accommodation are not limited to physical structures. *See Carparts*, 37 F.3d at 19–20. Specifically, by its ruling, the *Carparts* court indicated that an insurance company that provides benefit plans to employers for their employees may be liable under Title III to those employees. *See Carparts*, 37 F.3d at 19–20. Plaintiff cites *Carparts* in support of his contention that Northwestern is a place of public accommodation within the reach of Title III. *See* Plaint. Resp. Br. at 7–8.

The Sixth Circuit in *Parker* criticized the First Circuit's conclusion that a place of public accommodation is not limited to a physical structure. *See Parker*, 121 F.3d at 1013. The *Carparts* court reached its conclusion by examining the entities listed in § 12181(7), finding that the plain meaning of the following terms indicates that a place of public accommodation does not require an actual physical structure, or that at least the language is ambiguous: "travel service," "shoe repair service," "office of an accountant or lawyer," "insurance office," "professional office of a health care provider" and "other service establishment." *See Carparts*, 37 F.3d at 19. But the Sixth Circuit challenged this conclusion, asserting:

> the clear connotation of the words in § 12181(7) is that a public accommodation is a physical place. The terms travel service, shoe repair service, office of an accountant or lawyer, insurance office, and professional office of a healthcare [sic] provider do not suggest otherwise. Rather than suggesting that Title III includes within its purview entities other than physical places, it is likely that Congress simply had no better term than "service" to describe an office where travel agents provide travel services and a place where shoes are repaired. Office of an accoun-

tant or lawyer, insurance office, and professional office of a healthcare [sic] provider, in the context of the other terms listed, suggest a physical place where services may be obtained and nothing more. To interpret these terms as permitting a place of accommodation to constitute something other than a physical place is to ignore the text of the statute and the principle of *noscitur a sociis.*

*Parker,* 121 F.3d at 1014. As the court explained, the doctrine of *noscitur a sociis* is one of statutory construction, requiring that "a term ... [be] interpreted within the context of the accompanying words to avoid the giving of unintended breadth to the Acts of Congress." *Parker* 121 F.3d at 1014 (quoting *Kurinsky v. United States,* 33 F.3d 594, 597 (6th Cir.1994) and *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961)). Thus, after reviewing the language of the statute and applying the doctrine of *noscitur a sociis,* the *Parker* court concluded that a place of public accommodation is a physical place. *See Parker,* 121 F.3d at 1014.

Neither the Supreme Court nor the Seventh Circuit (nor any other circuit court to our knowledge) has addressed the split of authority between the First and Sixth Circuits on this issue, although several federal district courts have considered it.[3] The only two district courts within this circuit to have approached the question both found that a place of public accommodation under Title III is a physical place. *See Brown v.1995 Tenet ParaAmerica Bicycle Challenge,* 959 F.Supp. 496, 498 (N.D.Ill.1997) (rejecting *Carparts* and following the Sixth Circuit's approach in *Stoutenborough v. National Football League,* 59 F.3d 580, 583 (6th Cir. 1995), upon which the *Parker* court relied); *Baker v. Hartford Life Ins. Co.,* 1995 WL 573430, *3 (N.D.Ill. Sept.28, 1995). While the district court in *Brown* rejected *Carparts*

(*see Brown,* 959 F.Supp. at 498), *Brown* was decided before *Parker* and so the district court did not consider it. The district court in *Baker* did not address either *Parker* or *Carparts.* We have not located any other courts in the Seventh Circuit that have reached this issue.

Having no binding precedent to follow, and having considered the parties' arguments and reviewed both *Parker* and *Carparts,* we regard the Sixth Circuit's approach as the correct one. The establishments enumerated in § 12181(7) clearly show that a "place of public accommodation" is a physical place, and the statute's use of the terms "service" and "office" does not indicate otherwise. Further, like the Sixth Circuit in *Parker,* we find persuasive the fact that Plaintiff obtained the long-term disability benefit plan as an employee through his employer, rather than as an individual through the insurance sales offices of Northwestern. Therefore, we hold that Northwestern is not a place of public accommodation under Title III of the ADA, and because Title III does not apply to an employer-provided long-term disability plan, the safe harbor provision in Title IV is not implicated. We do not need to address Northwestern's argument regarding Title IV, and so we will not. Similarly, we do not need to reach Northwestern's argument that the benefit plan in question provided equal access to disabled and non-disabled employees. For the reasons discussed above, we *grant* Northwestern's motion to dismiss Plaintiff's claim under Title III of the ADA.

## CONCLUSION

Northwestern moves to dismiss Plaintiff's complaint, which alleges claims for breach of contract and violation of Title VII, ERISA, the ADA and the Indiana Civil Rights Law. The Court finds that: (1) Plaintiff has abandoned his breach of contract, Title VII,

**3.** We note that the decisions of the district courts appear fairly balanced between those supporting *Parker* and those following *Carparts. See, e.g., Leonard F. v. Israel Discount Bank of New York,* 967 F.Supp. 802 (S.D.N.Y.1997) (rejecting *Carparts*); *Brewster v. Cooley Assocs./Counseling and Consulting Services,* 1997 WL 823634 (D.N.M. Nov.6, 1997) (following *Parker*); *Rogers v. Department of Health and Environmental Control,* 985 F.Supp. 635 (D.S.C.1997) (following *Parker*);

*Pappas v. Bethesda Hosp., Ass'n,* 861 F.Supp. 616 (S.D.Ohio 1994) (cited in *Parker*); *Lewis v. Aetna Life Ins. Co.,* 982 F.Supp. 1158 (E.D.Va.1997) (following *Carparts*); *Kotev v. First Colony Life Ins. Co.,* 927 F.Supp. 1316 (C.D.Cal.1996) (following *Carparts*); *Cloutier v. Prudential Ins. Co.,* 964 F.Supp. 299 (N.D.Cal.1997); *World Ins. Co. v. Branch,* 966 F.Supp. 1203 (N.D.Ga.1997) (following *Carparts*).

ERISA and Indiana Civil Rights Law claims as to Northwestern and dismissal is warranted on that basis; (2) Plaintiff is not a qualified individual with a disability and thus Plaintiff cannot state a claim under Title I of the ADA and (3) Northwestern is not a place of public accommodation and thus Plaintiff cannot state a claim against Northwestern under Title III of the ADA. Accordingly, for the reasons set forth above, we *grant* Northwestern's motion to dismiss Plaintiff's complaint as to Northwestern.