**Philip DICKEY, Plaintiff,**

v.

**PEOPLES ENERGY CORPORATION, an Illinois corporation, a/k/a Peoples Gas Company, Defendant.**

**No. 95 C 3108.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 31, 1996.

David Allan Beck, Ronald A. Orner, Orner & Wasserman, Ltd., Chicago, IL, Mary Alice Mazurk, Chicago, IL, for Philip Dickey.

John P. Jacoby, Paul F. Gleeson, Kathleen Liv Lyons, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Peoples Energy Corp.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This case arises from plaintiff Philip Dickey's dismissal by his employer after it found him no longer eligible to receive long term disability benefits and its subsequent conclusion that it was unable to find a job for him that he was able and qualified to perform with or without a reasonable accommodation. Mr. Dickey sues under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA"). The matter is now before us on defendant's motion for summary judgment. For the reasons set forth below, we grant the motion.

### Background

The defendant, Peoples Gas Light and

Coke Company (the "Company"),[1] is a public utility engaged in the sale and distribution of natural gas to customers in the City of Chicago. The plaintiff, Philip Dickey, began his employment with the Company as a laborer on August 12, 1968. As a result of acute arthritis of his hands, Mr. Dickey was absent from work from September 1985 to February 1986. On February 3, 1986, his doctor released him to return to work, provided he avoid air hammering, digging, and tasks that involve gripping objects with his hands. As a result of these restrictions, Mr. Dickey was transferred to the job of yard laborer at the Company's Central District shop facility. His duties included loading meters weighing five to seven pounds into crates by hand; emptying plastic refuse bags into a dumpster by hand; operating a forklift to move various objects; sweeping the facility using both a push broom and an automatic sweeper; driving a Company vehicle to making deliveries to employees in the field; maintaining the grounds; and washing cars.

While continuing to suffer from acute arthritis, Mr. Dickey injured his back on August 28, 1989, while lifting meters to place them in a crate. He has not returned to work since this injury.[2] Mr. Dickey underwent back surgery on October 10, 1989, and, on March 1, 1990, his physician advised the Company that Mr. Dickey would not be able to return to his previous level of work activity because of a high risk of re-injury if he engaged in any lifting activity.

On April 2, 1990, Mr. Dickey advised the Company's medical director, Dr. E. Alannah Ruder, that he suffers nearly constant back pain that increases with walking up to four blocks and that he engages in no activities more strenuous than that. Mr. Dickey's

physician also advised Dr. Ruder at about this time that Mr. Dickey should perform only sedentary work. Mr. Dickey received sickness benefits from the Company from August 28, 1989 until October 30, 1990, when they were exhausted.

After a case meeting held by the Company on November 11, 1990, regarding Mr. Dickey's employment position, Mr. Dickey was instructed to apply for disability benefits under the Social Security Act (the "Act") and for long term disability ("LTD") benefits under the Company's Long Term Disability Benefit Plan. Mr. Dickey did so, stating that he could neither stand nor sit very long and could not walk four blocks before experiencing pain, and that he had constant pain in his hands, right shoulder, arm, lower back, and legs. On April 2, 1991, the Company's administrator of the LTD Plan, John Hancock Mutual Life Insurance Company ("John Hancock"), determined that Mr. Dickey was eligible for LTD benefits, retroactive to October 31, 1990, when his sickness benefits expired. In follow-up reports, Mr. Dickey's physician advised the Company, on February 26, 1992, that Mr. Dickey's condition had not improved and that he could not perform clerical work due to carpal tunnel syndrome and, on May 30, 1992, that he is totally disabled and unable to engage in any substantial gainful activity.

On September 25, 1992, an administrative law judge of the Social Security Administration ruled that Mr. Dickey is able to perform sedentary work and is therefore not disabled within the meaning of the Act. Accordingly, he found that Mr. Dickey was not entitled to disability benefits under the Act. Upon reviewing this decision and reconsidering Mr. Dickey's medical record, John Hancock rec-

1. In his complaint, Mr. Dickey denominates the defendant as "Peoples Energy Corporation, a/k/a Peoples Gas Company." Compl. at ¶ 6. In its answer, the Company denies this denomination and states that "The Peoples Gas Light and Coke Company is a subsidiary of Peoples Energy Corporation...." Because it remains uncertain whether Mr. Dickey intends to sue the parent corporation, the subsidiary, or both, we have retained the caption for this case as set out in the complaint, as has the Company, which—since it appears to have accepted the role—we shall refer to provisionally as the defendant. Because we grant the Company's motion for summary judg-

ment, we need not now resolve the precise identity of the defendant(s), but we caution Mr. Dickey and his counsel to resolve the matter on their own if they determine that it is proper to bring an action under ERISA.

2. The defendant refers to Mr. Dickey's back injury of August 28, 1989 as an "alleged injury" in its recital of facts. Because our decision today does not depend on a determination of whether or not the injury was real, we shall assume for present purposes that it was.

ommended, on November 23, 1992, that the Company discontinue LTD benefits, for the reason that he was not "totally disabled" under the Company's LTD Plan.

On December 16, 1992, Mr. Dickey was evaluated by the Company's medical department. He reported that his condition was about the same as it was a year earlier, that he still had pain and pressure in his lower back and was unable to bend, that the pain was not as bad as before and he was taking less pain medication, that his activity at home was limited to lying in bed, trips to the bathroom and to the postoffice by bus or "El," that he had not driven in two years, and that he could not suggest any tasks or jobs he could perform.

On December 23, 1992, the Company notified Mr. Dickey that it was terminating his LTD benefits, and it invited him to request an accommodation so that the Company could assess possible job opportunities for him. Mr. Dickey responded, stating that he could not engage in bending, lifting, prolonged standing or sitting, walking, or gripping. He placed a question mark in the space where he was to indicate the type of accommodation requested. He did not know what type of accommodation to request, because he was no longer familiar with what jobs were open or the content of the jobs— the only particular job he had in mind was that of yard laborer.

Mr. Dickey appealed both the denial of disability benefits under the Social Security Act[3] and the denial of LTD benefits under the Company's LTD Plan, continuing to assert that he was totally disabled within the meaning of both the Act and the LTD Plan.

On February 17, 1993, the Company's ADA Compliance Committee reviewed Mr. Dickey's case and decided, based on the available medical information and his assertions of the limited activities in which he could engage, that he was unable to return to the yard laborer job and also that there was no other job in the Company that he had both the skills and the physical ability to perform. Nevertheless, the committee chair, John Ibach, directed the Employment and Training Department to review all job openings to determine if Mr. Dickey could perform any of them. None were found—Mr. Dickey concedes that he cannot type, take shorthand, or work with a computer, and he knows of no office job that he has the ability to perform—and on March 4, 1993, Mr. Dickey was notified that his request for an accommodation was denied, but that he would be placed on layoff status' until his appeal for reinstatement of LTD benefits was concluded.

On May 27, 1993, Mr. Dickey's attorney furnished the Company, in support of the appeal, a letter from Mr. Dickey's physician that stated that Mr. Dickey's condition, as of May 10, 1993, was as follows: chronic low back pain, occasional sharp pain in the right leg, and numbness; increased back pain with standing or sitting for fifteen minutes; discomfort after walking three or four blocks; and limited ability to bend or lift without pain.

On July 27, 1993, the Company notified Mr. Dickey that his appeal for reinstatement of LTD benefits was denied because he no longer met the definition of "total disability" under the LTD Plan. On August 30, 1993, the Company notified him that in view of the denial of his appeal, a lump sum severance allowance would be paid and that he could now withdraw the shares of the Company's stock held in trust for him in the Company's employee stock ownership plan.

On May 24, 1994, Mr. Dickey filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that "I could have returned to work, was released to do so by my doctors, but was not allowed to do so by Respondent." He was later issued a right-to-sue letter. This action followed.

### Discussion

In order to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is

3. The evidentiary record is silent as to the outcome of this appeal, though Mr. Dickey states in his response that it was denied but does not state when.

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e., "whether a proper jury question was presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

We view all evidence and all inferences therefrom in the light most favorable to the party opposing the motion for summary judgment. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir. 1991) (citing *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990)). However, if that party bears the burden of proof at trial on a dispositive issue, that party is required "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). Ultimately, if "alternate inferences can be drawn from the available evidence, summary judgment is inappropriate." *LHLC Corp. v. Cluett Peabody & Co.,* 842 F.2d 928 (7th Cir.1988). "Summary judgment is only appropriate when no reasonable jury could find for the moving party." *Karazanos,* 948 F.2d at 335 (citing *Doe v. Allied Signal, Inc.,* 925 F.2d 1007, 1008 (7th Cir. 1991)).

■ The ADA provides that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees. . . .

42 U.S.C. § 12112(a). The ADA defines "qualified individual with a disability" as follows:

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. . . .

42 U.S.C. § 12111(8).

The defendant contends that Mr. Dickey cannot be considered a "qualified individual with a disability," because he cannot show that, with or without a reasonable accommodation, he could perform the essential functions of a job that he holds or desires. The undisputed evidence shows that Mr. Dickey could not perform the essential functions of the yard laborer job—the job he had held prior to the onset of his disability—or any other available job he may have desired. His doctors advised the Company that he could not return to his job as yard laborer, that he should perform only sedentary work, that his condition had not improved since his back surgery, and that he is totally disabled—unable to engage in any substantial gainful activity. Mr. Dickey himself asserts that he suffers nearly constant pain and his movements are severely limited; he is unable to suggest any tasks or jobs that he can perform and is unable to suggest any accommodations that would allow him to perform any available jobs.

Furthermore, since November 20, 1990, Mr. Dickey has sought disability benefits under both the Social Security Act and the Company's LTD Plan, contending that he meets the definition of "totally disabled" under both programs. He cannot consistently claim now that he could have performed the essential functions of his job as yard laborer, or any other job, during a period when he sought LTD benefits claiming total disability.

■ The Company's contention thus appears unassailable. Mr. Dickey's only response is to argue that the defendant reads the statutory definition of "qualified individual with a disability" too narrowly, by pointing out that the definition applies to an individual who can fulfill the essential functions of an "employment position." *See* 42 U.S.C. 12111(8). In essence, Mr. Dickey argues that by using the term "employment position" rather than "job," the definition covers not only those who are able, with or without a reasonable accommodation, to perform the essential functions of the job they hold or desire, but also the "employment position" actually occupied by Mr. Dickey: that of an LTD benefit recipient. Thus, the argument goes, as long as Mr. Dickey satisfies all non-

discriminatory eligibility criteria for receipt of benefits, he is a "qualified individual with a disability" within the meaning of the ADA.

By making this argument, Mr. Dickey appears to abandon the claim upon which he brought this lawsuit—that the Company failed to accommodate his disability by not allowing him to return to work—and to substitute a new one—that the Company improperly terminated his LTD benefits. To be sure, this substituted claim is not stated explicitly, but it is the only way to make sense of the argument the plaintiff now raises that he is a "qualified individual with a disability." In any case, in a ruling issued after the defendant filed its reply brief in the instant motion, the Seventh Circuit has found the precise argument that Mr. Dickey now raises to be without merit. *EEOC v. CNA Ins. Cos.*, 96 F.3d 1039 (7th Cir.1996). We can do no better than to quote the relevant passage from that ruling:

> The EEOC's principal theory is, at best, strained. It asserts that Valladares–Toledo's "employment position" *vis-a-vis* CNA is now that of "disability benefit recipient." Because CNA imposes no job-related duties on any of the beneficiaries of its long-term disability plan, Valladares–Toledo by definition can perform the essential functions of her position: there are none, other than collecting the benefit checks for as long as she is entitled to do so....
>
> We need not tarry long on the argument that the status of "benefit recipient" fits within the definition of someone filling an "employment position," as required by 42 U.S.C. § 12111(8). An "employment position" is a job.

*Id.* at 1043–44. This ruling compels our conclusion that Mr. Dickey is not a "qualified individual with a disability" within the meaning of the ADA and is therefore not entitled to the protection of the ADA.

Mr. Dickey's change of theory in midstream seems to argue that his complaint should be analyzed, not under the ADA, but under the Employee Retirement Income Security Act, 29 U.S.C. S § 1001–1461 ("ERISA"), stating the claim that Mr. Dickey's LTD benefits were improperly terminated. Even though there is insufficient evidence now before us to decide such a claim, under the liberal pleading standards of the Federal Rules of Civil Procedure we might be able to preserve an ERISA claim for further adjudication if Mr. Dickey's complaint could be construed to encompass such a claim.

Unfortunately for Mr. Dickey, his complaint cannot be so construed. Though it is possible that Mr. Dickey and his counsel believed all along that the denial of disability benefits was tantamount to a denial of a reasonable accommodation under the ADA, the complaint never made that equation explicit. The language of the complaint is exclusively couched in terms of a denial of reasonable accommodation within the meaning of the ADA and does not allege that Mr. Dickey is totally disabled. In fact, it alleges the opposite:

> From on or about January 1991 until on or about December 1992, Plaintiff was placed on long term disability by PEOPLES GAS despite being able to fulfill productive and useful functions for PEOPLES GAS.

Compl. at ¶ 14. Furthermore, Mr. Dickey attached to his complaint and incorporated by reference his right-to-sue letter from the EEOC, which states that, in his EEOC charge, he had alleged that "he was discriminated against because of his disability in violation of the ADA in that he was released to return to work by his doctor and could return to work, but was not allowed to do so by Respondent." We conclude that Mr. Dickey's complaint cannot be construed to encompass the ERISA claim that his LTD benefits were improperly denied that he now seems to be pursuing in his response to defendant's motion for summary judgment. Because the complaint before us does not state an ERISA claim and because the evidence in this case cannot support the ADA claim that is explicit in the complaint, we grant defendant's motion for summary judgment.

### Conclusion

For the foregoing reasons defendant's motion for summary judgment is granted. This is a final and appealable order.