**Berta BRIL, Plaintiff,**

v.

**DEAN WITTER, DISCOVER & CO., Defendant.**

**No. 96 Civ. 8780(SAS).**

United States District Court, S.D. New York.

Sept. 9, 1997.

Robert L. Schonfeld, Stein & Schonfeld, Garden City, NY, for Plaintiff.

J. Michael Riordan, Bressler, Amery & Ross, New York, NY, for Defendant.

---

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Berta Bril ("Bril" or "Plaintiff") brings this action against her former employer Dean Witter Reynolds Inc., sued herein as Dean Witter, Discover & Co. ("Dean Witter" or "Defendant"), alleging a violation of Title I of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"). Dean Witter has moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion is granted and the complaint is dismissed.

### I. Facts

Bril was hired by Dean Witter in 1983 as an accountant and received satisfactory ratings for her work performance throughout her employment. Complaint ("Cmpl."), ¶¶ 7–8. On December 27, 1993, Plaintiff suffered a nervous breakdown and never returned to work. *Id.* at ¶ 12. In May of 1994, Plaintiff applied for long-term disability benefits under Dean Witter's long-term disability insurance plan.[1] *Id.* ¶ 16. In June of 1994, Dean Witter's insurance carrier determined that Plaintiff had a disability and approved her claim for long-term disability benefits. *Id.* at ¶ 17.

Defendant's insurance plan differentiates between psychiatric and physical illnesses. *Id.* at ¶ 14. Coverage is provided to people with physical disabilities without limit until age 65 whereas coverage for people with disabilities caused by "mental, psychoneurotic and personal disorders" is limited to two years. *Id.* Accordingly, Plaintiff's benefits were discontinued on June 21, 1996. *Id.* at ¶ 18.

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on August 2, 1996 claiming that the long-term disability insurance provided by Dean Witter discriminates on the basis of disability in violation of Title I of the ADA. *Id.* at ¶ 21. The EEOC issued a "right-to-

sue" letter to Plaintiff on August 26, 1996. *Id.* at ¶ 23. This action followed.

### II. The Legal Standard

A motion to dismiss must be decided based on the allegations contained on the face of the complaint. *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). In deciding such a motion, the Court must accept as true all of plaintiff's factual allegations. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986). Moreover, the Court must draw all reasonable inferences in favor of the non-moving party. *Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). Such a motion cannot be granted simply because recovery appears remote or unlikely; "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Rather, dismissal is only warranted where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### III. Discussion

#### A. The Statute

With regard to discrimination, the ADA provides that:

> No covered entity shall discriminate against a *qualified individual with a disability* because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis added). The regulations expressly prohibit discrimination with respect to "[f]ringe benefits available by virtue of employment, whether or not administered by the covered entity. . . ." 29 C.F.R. § 1630.4. Title I of the ADA, however, is only

---

1. As a fringe benefit of employment, Dean Witter provides short and long-term disability insurance coverage to all of its employees. Cmpl, ¶ 9.

applicable to a "qualified individual with a disability"[2] which has been defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The issue presented is whether Plaintiff, who was totally disabled from performing her previous position at the time her insurance benefits were terminated, has standing under the ADA to bring the present action.

### B. The Precedents

Although the Second Circuit has not yet addressed this issue, a number of other courts have. For example, in *Parker v. Metropolitan Life Ins. Co.*, 99 F.3d 181 (6th Cir.1996)[3], plaintiff brought suit challenging the very same sub-limitation in insurance benefits, *i.e.*, 24 months for mental disorders, up to age 65 for physical disorders. The district court held that the plaintiff did not have standing to sue under Title I of the ADA because she was not a "qualified individual with a disability." *Id.* at 185. The Sixth Circuit affirmed with the following explanation:

> Under the District Court's interpretation of the plain meaning of the statute, [plaintiff] was at no time a "qualified individual with a disability." At the time she could "perform the essential functions" of her job, she was not disabled for purposes of her long term disability claim, and therefore was not covered by the Disabilities Act, and at the time her insurance benefits terminated, she could no longer perform her job.

*Id.* at 186. Plaintiff challenged this holding by arguing that she was invoking the statute in an attempt to retain the "employment position" of "benefit recipient." *Id.* The Sixth Circuit rejected this line of reasoning, stating that:

**2.** *See Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th Cir.1996) (only a "qualified individual with a disability" can state a claim for discrimination).

**3.** Following this decision, the defendants sought rehearing *en banc* of the panel's disposition of plaintiff's Title III claim. This petition was

Plaintiff's proposed construction of the statute is not persuasive. The concept of "benefits recipient" relies on a convoluted construction of the statutory language, which conflicts with the plain meaning of the words. Perhaps the drafters of the statute intended that [plaintiff's] situation bring her within the coverage of the Disabilities Act. If that is the case, they failed to provide definitions that lend themselves to doing so. Unfortunately, Congress may not have taken this situation into account. Such an oversight, however, is for Congress to remedy. We should not try to rewrite the statute in a way that conflicts with what appears to be fairly clear language.

*Id.* at 187.

In addition to construing the ADA in accordance with its plain meaning, the Sixth Circuit cited the case of *Gonzales v. Garner Food Services, Inc.*, 89 F.3d 1523 (11th Cir. 1996), as further support for its reasoning. In *Gonzales*, the Eleventh Circuit held that a former employee who was a participant in his former employer's health plan by virtue of his former employment was not a "qualified individual with a disability" within the meaning of the ADA. *Gonzales*, 89 F.3d at 1526. Plaintiff argued that "since the fruits of many fringe benefits are realized during the post-employment period, Congress must have intended former employees to be protected under the ADA as well." *Id.* To this argument, the court responded as follows:

> Absent clearly expressed legislative intent to the contrary, the plain language of the statute should be conclusive. In adhering to the cardinal rule, we find the plain language of the ADA clearly demonstrates the intent of Congress to limit the scope of the Act to only job applicants and current employees capable of performing essential functions of available jobs. We find no clearly expressed legislative intent sug-

granted and the prior judgment was vacated. The judgment of the district court was again affirmed in *Parker v. Metropolitan Life Ins. Co.*, No. 95–5269, 1997 WL 431851 (6th Cir. Aug.1, 1997) ("*Parker II*"). Since plaintiff did not seek rehearing on the disposition of her Title I claim, *id.* at * 2, n. 2, the decision reported at 99 F.3d 181 remains applicable.

gesting that former employees such as [plaintiff] should be covered under the Act as well.

*Id.* at 1528 (citations omitted).[4]

The argument that "disability benefit recipient" somehow constitutes an "employment position" was also raised in the case of *Equal Employment Opportunity Commission v. CNA Ins. Cos.*, 96 F.3d 1039 (7th Cir.1996). In *CNA*, the Seventh Circuit affirmed the district court's finding that plaintiff, who was challenging the same sub-limitation in issue here, had no standing under Title I of the ADA because she did not meet the statutory definition of a "qualified individual with a disability." *Id.* at 1042, 1045. In addressing the "benefit recipient" argument advanced by plaintiff the court stated:

> We need not tarry long on the argument that the status of "benefit recipient" fits within the definition of someone filling an "employment position," as required by 42 U.S.C. § 12111(8). An "employment position" is a job.

*Id.* at 1044. Other circuits have reached the same conclusion. *See, e.g., McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir.1996) ("a person unable to work is not intended to be, and is not, covered by the ADA"); *Kennedy v. Applause, Inc.*, 90 F.3d at 1481 (a plaintiff in an employment discrimination claim under the ADA "bears the burden of demonstrating that she can perform the essential functions of her job with or without reasonable accommodation"). Numerous lower courts are in accord.[5]

Cases in the Southern District of New York appear to be split on the issue of standing. In the case of *Leonard F. v. Israel Discount Bank of New York*, No. 95 Civ. 6964, 1996 WL 634860 (S.D.N.Y. Sept.24, 1996), the plaintiff challenged a similar sub-limitation in long-term disability benefits. In asserting that he had standing, plaintiff argued that:

> that the language of analogous federal civil rights laws, such as Title VII, has been broadly construed so long as the discrimination being challenged is grounded in the employment relationship. Because entitlement to fringe benefits undeniably is grounded in the employment relationship, plaintiff contends that the Court must give an expansive construction to the phrase "Qualified individual with a disability" so as to grant plaintiff relief from defendant's allegedly discriminatory limitation on his fringe benefits.

*Id.* at * 2. The court apparently agreed with the plaintiffs' position. In denying the employer's motion to dismiss, the court took notice of the opinion expressed by the EEOC as *amicus curiae*. *Id.* at * 3. The EEOC stated that "the relevant 'employment position' in any case involving post-employment fringe benefits, is the position actually occupied by the plaintiff, that of benefit recipient, and that as long as the plaintiff satisfies any nondiscriminatory eligibility criteria for receipt of such benefits, he is a 'qualified individual' within the meaning of the ADA." *Id.* This argument was subsequently rejected by Judge Jones in the case of *Hollander v. Paul Revere Life Ins. Co.*, 96 Civ. 4911, 1997 WL

---

4. In his dissent, Judge Anderson states:

It would be counter-intuitive, and quite surprising, to suppose (as the majority nevertheless does) that Congress intended to protect current employees' fringe benefits, but intended to then abruptly terminate that protection upon retirement or termination, at precisely the time that those benefits are designed to materialize. The structure of the statute, in clearly extending protection to fringe benefit plans, indicates that Congress intended protection for those routinely and commonly covered by such employer-provided plans.

*Gonzales*, 89 F.3d at 1532. The majority counters by citing legislative history stating that "the purpose of including the phrase 'essential functions' within the QID definition is to 'ensure that employers can continue to require that all appli-

cants and employees, including those with disabilities, are able to perform the essential, i.e., the non-marginal functions of the job in question [sic].'" *Id.* at 1529, n. 15 (quoting H.R.Rep. No. 485(II), 101st Cong., 2d Sess. 55 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 337).

5. *See, e.g., Esfahani v. Medical College of Pennsylvania*, 919 F.Supp. 832, 836 (E.D.Pa.1996) (once plaintiff became totally disabled, he ceased to be a qualified individual with a disability and ceased to have standing under the ADA); *Morton v. GTE North Inc.*, 922 F.Supp. 1169 (N.D.Tx.1996), aff'd, 114 F.3d 1182 (5th Cir.1997); *Johnson v. Hines Nurseries, Inc.*, 950 F.Supp. 175 (N.D.Tx. 1996); *Dickey v. Peoples Energy Corp.*, 955 F.Supp. 886 (N.D.Ill.1996).

811531 (S.D.N.Y. April 18, 1997) (noting that the same argument has been rejected by the Seventh and Eleventh circuits as well).

The issue of standing has also been addressed in two diametrically opposed cases, *Graboski v. Guiliani*, 937 F.Supp. 258 (S.D.N.Y.1996) and *Castellano v. City of New York*, 946 F.Supp. 249 (S.D.N.Y.1996) (both are currently on appeal). In *Graboski*, disability retirees brought suit challenging their exclusion from the class of retirees eligible to receive supplemental pension benefits from a city fire department pension plan. Defendants argued that plaintiffs are not covered under Title I because they are no longer able to perform the essential functions of their former jobs. Judge Kaplan disagreed as follows:

> Such a crabbed view of the ADA's coverage would undermine the statute's unambiguous remedial purpose. Title I of the ADA expressly prohibits discrimination in the provision of fringe benefits. As certain fringe benefits (such as pensions and health insurance continuation) are meaningful only post-employment, it is only logical that the statute's coverage reaches the period when the employment benefits are to be reaped. Moreover, the definition of "employee" under the ADA parallels that under Title VII and was intended to be given the same meaning.... Under Title VII, "discrimination related to or arising out of an employment relationship, whether or not the person discriminated against is an employee at the time of the discriminatory conduct" is actionable.... The definition of the term "otherwise qualified" in Title I of the ADA was not intended to distinguish this employment discrimination law from Title VII by abrogating coverage of former employees challenging discrimination arising out of the employment relationship.

*Graboski*, 937 F.Supp. at 266 (citations omitted).[6]

On the other hand, in *Castellano* Judge Stein denied standing to physically and mentally incapacitated police officers suing under the ADA. In doing so, he stated that "although it may seem 'undesirable and perhaps unpalatable,' *Parker v. Metropolitan Life In-*

*sur. Co.*, 875 F.Supp. 1321, 1326 (W.D.Tenn. 1995), an individual who is totally disabled— that is, unable to perform the essential job functions with reasonable accommodation—is not entitled to relief under these provisions." *Castellano*, 946 F.Supp. at 253 (citing numerous cases).

C. Legal Analysis

■ The first step in interpreting a statute is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. [The] inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. at ——, 117 S.Ct. at 846 (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). The plain language of Title I prohibits discrimination in regard to: (1) job application procedures; (2) hiring; (3) advancement; (4) discharge; (5) compensation; (6) job training; and (7) other terms, conditions and privileges of employment. Clearly, the first six categories do not apply to this case. Although the last category may seem appealing, it too is inapplicable as the Plaintiff suffered no discrimination cognizable under Title I of the ADA as a result of the distinction between mental and physical disabilities found in Dean Witter's long-term disability plan. From the onset of employment, all of Dean Witter's employees, both the disabled and the non-disabled, are treated even-handedly with regard to long-term disability benefits. All are subject to the same risk of developing a mental or physical disability some time in the future and all are subject to the same two-year limitation in mental health benefits. Such differentiation in types of benefits does not fall within the purview of Title I of the ADA. As the Seventh Circuit aptly noted:

> [T]here is no claim that CNA discriminated on the basis of disability in offering its pension plan to anyone. All employees—the perfectly healthy, the physically disabled, and the mentally disabled—had a plan that promised them long-term benefits from the onset of disability until age 65 if their problem was physical, and long-

---

6.  In *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), the Supreme Court held that former employees have standing to sue under Title VII.

term benefits for two years if the problem was mental or nervous. *This may or may not be an enlightened way to do things, but it was not discriminatory in the usual sense of the term.*

CNA *Ins. Cos.*, 96 F.3d at 1044 (emphasis added, internal citations omitted).

In short, Plaintiff, who admittedly was totally disabled at the time her benefits were discontinued, does not fit the statutory definition of a "qualified individual with a disability." As such, she cannot bring suit against her former employer under Title I of the ADA. However, Plaintiff may have a remedy under another Title of the ADA, the federal Constitution, and/or the Constitution of the State of New York. Accordingly, Plaintiff is granted leave to amend her complaint to assert such a claim if she concludes that it would be appropriate to do so.

## IV. Conclusion

For the reasons stated above, Defendant's motion to dismiss the complaint is granted. Plaintiff is granted leave to amend her complaint within 30 days of the date of this opinion if she chooses to do so. If no amended complaint is filed, the Clerk of the Court is directed to close this case.

SO ORDERED.