Major ROGERS, Plaintiff–Appellant,

v.

DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL; South Carolina Budget and Control Board, Office of Insurance Services, Defendants–Appellees,

South Carolina Retirement System, Defendant.

The Association of Private Pension and Welfare Plans; Bluecross and Blue Shield Association; American Council of life Insurance; The Health Insurance Association of America; State and Local Government Benefits Association; Equal Employment Advisory Council; United States of America, Amici Curiae.

No. 97–2780.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 25, 1998.

Decided April 8, 1999.

**ARGUED:** William Andrew Arnold, Arnold & Murphy, L.L.C., Greenville, SC, for Appellant. Ashley Bryan Abel, Jackson, Lewis, Schnitzler & Krupman, Greenville, SC, for Appellees. **ON BRIEF:** Robert E. Hoskins, Foster & Foster, L.L.P., Greenville, SC, for Appellant. Ronald S. Cooper, Tracy Zorpette, Steptoe & Johnson, L.L.P., Washington, D.C.; James A. Klein, Association of Private Pension and Welfare Plans, Washington, D.C.; William A. Breskin, Blue Cross and Blue Shield Association, Washington, D.C., for Amici Curiae Welfare Plans and Blue Cross. Gregory G. Katsas, Carol M. Stapleton, Jones, Day, Reavis & Pogue, Washington, D.C.; Phillip E. Stano, Terri Sorota, American Council of Life Insurance, Washington, D.C.; Jeffrey L. Gabardi, Health Insurance Association of America, Washington, D.C., for Amici Curiae ACLI and HIAA. Lynn Zehnder, State and Local Government Benefits Association, Springfield, IL, for Amicus Curiae Benefits Association. Ann Elizabeth Reesman, Corrie L. Fischel, McGuinness & Williams, Washington, D.C., for Amicus Curiae Advisory Council. Bill Lann Lee, Acting Assistant Attorney General, Mark L. Gross, Marie K. McElderry, U.S. Department of Justice, Wasington, D.C., for Amicus Curiae U.S.

Before HAMILTON and MICHAEL, Circuit Judges, and MOON, United States District Judge for the Western District of Virginia, sitting by designation.

## OPINION

MICHAEL, Circuit Judge:

The key question in this case is whether Title II of the Americans With Disabilities Act of 1990 (ADA or Act), 42 U.S.C. §§ 12132–12134 (1994), requires a state's long-term disability plan to provide equal benefits for mental and physical disabilities. We hold that it does not.

## I.

The facts are undisputed and can be stated in short order. Major Rogers was employed by the South Carolina Department of Health and Environmental Control (DHEC) as a maintenance engineer for approximately 22 years. As a state worker Rogers was a participant in a long-term disability plan sponsored by the State of South Carolina (the State) for the benefit of its employees. The plan administrator was the South Carolina Budget and Control Board, Office of Insurance Services (OIS). It appears that all eligible state employees were covered by the same plan. It provided one year of benefits for mental disabilities and benefits to age 65 for physical disabilities. Rogers was diagnosed with a panic-anxiety disorder, and he applied for long-term benefits under the plan based on a psychological disability. He received benefits for one year.

When his benefits ended, Rogers sued DHEC (which he treats as the State) and OIS in federal court, claiming that the State's plan discriminated against him on the basis of his mental disability, in violation of Title II of the ADA. Specifically, he alleged (1) that he was discriminated against because he was denied the same level of benefits as someone with a physical disability and (2) that the plan's "lower benefit level" for mental disability was not based on proper risk classification because the separate classification for mental disability lacked a sound actuarial basis. The State and OIS moved to dismiss Rogers' complaint for failure to state a claim. *See* Fed. R.Civ. P. 12(b)(6). The district court granted the motion, holding that a disparity in benefits between physical and mental disabilities in a benefit plan is not unlawful discrimination under the ADA. Rogers appeals.

## II.

Rogers contends that he has stated a claim for violation of Title II of the ADA

because the State's long-term disability plan arbitrarily provided different levels of benefits to the mentally and physically disabled. This states a claim only if the Act requires equal benefits for mental and physical disabilities or requires plan sponsors to justify risk classifications with actuarial data. We conclude that Title II requires neither. Our decision is consistent with recent opinions from the Third, Sixth, and Seventh Circuits. *See Ford v. Schering–Plough Corp.*, 145 F.3d 601, 608 (3d Cir.1998) (holding that "[t]he ADA does not require equal coverage for every type of disability"), *cert. denied*, ––– U.S. ––––, 119 S.Ct. 850, 142 L.Ed.2d 704 (1999); *Parker v. Metropolitan Life Insurance Co.*, 121 F.3d 1006, 1015 (6th Cir. 1997) (en banc) (same), *cert. denied*, ––– U.S. ––––, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998); *E.E.O.C. v. CNA Ins. Cos.*, 96 F.3d 1039, 1044 (7th Cir.1996) (same).

### A.

█ Title II of the ADA applies to "public entities," which include states and their departments and agencies. *See* 42 U.S.C. § 12131. The substance of Title II is that "no qualified individual with a disability shall, by reason of such disability, [1] be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or [2] *be subjected to discrimination by any such entity*." 42 U.S.C. § 12132 (emphasis added). Here, the State satisfied the first part of this provision because Rogers was not "excluded from participation in or denied the benefits of" the long-term disability plan. Specifically, the State provided the same plan to all of its eligible employees, and Rogers received his allotted benefits. We must address, however, whether the State's plan violated the second part of the provision, that is, whether the plan "subjected [Rogers] to discrimination" on the basis of his disability.

The broad question is whether the "subjected to discrimination" phrase in § 12132 was intended to require equal benefits for mental and physical disabilities. That question is not answered in plain language anywhere in the ADA, but we are not without guidance. The Supreme Court has interpreted a statute with similar language, the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (1994). In addition, the legislative history of the ADA and a policy statement of the Equal Employment Opportunity Commission (EEOC) are quite instructive. Finally, we get a good indication of the limits of § 12132 by reviewing another provision of the ADA and by analyzing post-ADA congressional activity. We will now examine these sources.

The Rehabilitation Act is the most appropriate starting point for our discussion because, in many ways, it is the precursor to the ADA. The two Acts share the same definitions of disability. *Compare* 42 U.S.C. § 12102(2)(a) (1994) (ADA) *with* 29 U.S.C. § 705(9)(B) (1994) (Rehabilitation Act). They also contain the same operative language about discrimination. *Compare* 42 U.S.C. § 12132 (*supra*, at 433) *with* 29 U.S.C. § 794(a) (1994) ("No otherwise qualified individual . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive Agency"). Moreover, Congress has called for a coordinated interpretation of the Rehabilitation Act and the ADA to "prevent[ ] imposition of inconsistent or conflicting standards for the same requirements" under the two statutes, *see* 42 U.S.C. § 12117(b) (1994); *Tyndall v. National Education Centers, Inc.*, 31 F.3d 209, 213 n. 1 (4th Cir.1994), and courts have used their understanding of the Rehabilitation Act to interpret the ADA, *see e.g., McPherson v. Michigan High School Athletic Association*, 119 F.3d 453, 460 (6th Cir.1997) ("[b]ecause the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other." (alteration in original) (citation omitted));

*Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n. 9 (4th Cir.1995) ("Because the language of [Title II of the ADA and the Rehabilitation Act] is substantially the same, we apply the same analysis to both"). Relevant Rehabilitation Act precedent, then, may inform our understanding of what § 12132 requires. We turn to that precedent.

In *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), certain Tennessee Medicaid recipients sued the State of Tennessee when it proposed a reduction in the number of days of inpatient hospital care covered by the state's Medicaid program. The recipients asserted a violation of § 504 of the Rehabilitation Act, claiming that the reduction would have a disproportionate (and discriminatory) effect on the handicapped, who generally require more extended hospital stays than the non-handicapped. *See id.* at 289–90, 105 S.Ct. 712. The Supreme Court disagreed. It held that the limit on hospital care was "neutral on its face" and did not "distinguish between those whose coverage will be reduced and those whose coverage will not on the basis of any test, judgment, or trait that the handicapped *as a class* are less capable of meeting or less likely of having." 469 U.S. at 302, 105 S.Ct. 712 (emphasis added). The Court said that the reduction in coverage did not discriminate against the handicapped because both classes of Medicaid users, the handicapped and the non-handicapped, were "subject to the same durational limitation." *Id.*

The Supreme Court built upon *Alexander v. Choate* in *Traynor v.Turnage*, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988). In *Traynor* the Court took up whether § 504 of the Rehabilitation Act requires equal benefits for all categories of handicapped persons. Certain veterans, claiming to be handicapped by reason of alcoholism, sued under § 504 to require the Veterans Administration to extend the ten-year period for use of educational benefits under the GI Bill. *Id.* at 538, 108 S.Ct.

1372. A statute allowed an extension if use of the benefits was prevented by a physical or mental disorder not caused by the veteran's own "willful misconduct." *Id.* Regulations defined willful misconduct to include "primary alcoholism." *Id.* at 539 n. 2, 108 S.Ct. 1372. The Supreme Court rejected the veterans' argument that the regulation discriminated against one type of handicap,alcoholism, in violation of § 504. "There is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons," the Court held. *Id.* at 549, 108 S.Ct. 1372. The Court emphasized that "the central purpose of § 504 ... is to assure that handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped individuals." *Id.* at 548, 108 S.Ct. 1372 (citations omitted).

We may presume that Congress was aware of the Supreme Court's interpretation of § 504 of the Rehabilitation Act when it (Congress) passed the ADA in 1990 and included antidiscrimination language in § 12132 that parallels § 504 of the Rehabilitation Act. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In fact, each House and Senate committee working on the ADA explicitly adopted the Supreme Court's interpretation of the Rehabilitation Act, that is, that benefit programs are not required to provide precisely the same benefits to all classes of disabled persons:

> [T]he Committee also wishes to clarify that in its view, as is stated by the U.S. Supreme Court in *Alexander v. Choate* ... employee benefits plans should not be found to be in violation of this legislation under impact analysis simply because they do not address the special needs of every person with a disability, e.g., additional sick leave or medical coverage.

S. Rep. 101–116, at 85 (1989); H.R. Rep. 101–485, at 137 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 420. Moreover, in its

report the Senate Committee on Labor and Human Resources addressed the precise issue presented in the case before us today: the committee said that an employer may "offer insurance policies that limit coverage for certain procedures or treatments, e.g., only a specific amount per year for mental health coverage." S.Rep. No. 101–116, at 29.

This construction of the ADA was adopted by the EEOC in its "interim policy guidance" on the application of the ADA to health insurance. The EEOC said:

> a feature of some employer provided health insurance plans is a distinction between the benefits provided for the treatment of physical conditions on the one hand, and the benefits provided for the treatment of "mental/nervous" conditions on the other. Typically, a lower level of benefits is provided for the treatment of mental/nervous conditions than is provided for the treatment of physical conditions.... Such broad distinctions, which apply to the treatment of a multitude of dissimilar conditions and which constrain individuals both with and without disabilities, are not distinctions based on disability. Consequently, although such distinctions may have a greater impact on certain individuals with disabilities, they do not intentionally discriminate on the basis of disability and do not violate the ADA.

EEOC: Interim Guidance on Application of ADA to Health Insurance (June 8, 1993), *reprinted in* Fair Empl. Prac. Man. (BNA) 405:7115, at 7118.

Employee health and disability benefit plans are normally funded through insurance. The ADA's "safe harbor" provision and the related legislative history suggest that Congress did not intend for the ADA to force a change in the way insurers do business. The "safe harbor" provision, § 501(c) (codified at 42 U.S.C. § 12201(c)), provides (in part) that the ADA "shall not be construed to prohibit or restrict ... an insurer, hospital or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law." This means, according to the Senate Committee on Labor and Human Resources, that the ADA "will not disrupt the current nature of insurance underwriting or ... of the insurance industry in sales, underwriting, pricing, administrative and other services, claims, and similar insurance related activities based on classification of risks as regulated by the States." S.Rep. No. 101–116, at 84–85. Similarly, the House Committee on Education and Labor explained that "the main purposes of [the ADA] include prohibiting discrimination in employment, public services, and places of public accommodation;" it was not intended to affect "the way the insurance industry does business in accordance with the State laws and regulations under which it is regulated." H.R.Rep. No. 101–485, at 136, *reprinted in* 1990 U.S.C.C.A.N. at 419.

Insurers have historically and consistently made distinctions between mental and physical illness in offering health and disability coverage. For instance, the National Association of Insurance Commissioners, in commentary to its model regulation on unfair discrimination, makes clear that "[t]he regulation is not intended to mandate the inclusion of particular coverages, such as benefits for normal pregnancy, or of levels of benefits such as for mental illness." Model Regulation on Unfair Discrimination in Life and Health Insurance on the Basis of Physical Impairment, Drafting Note § 3, *reprinted in* IV NAIC Model Regulation Service, 887–1 (July 1993); *see also Group Insurance* 442 (William F. Bluhm ed., 2d ed. 1996) ("Most LTD [long-term disability] plans impose a lifetime limit of 24 months on benefits for disabilities due to mental and nervous conditions when not confined to an institution."); EEOC: Interim Guidance on Application of ADA to Health Insurance, *supra* ("Typically, a lower level of

benefits is provided for the treatment of mental/nervous conditions than is provided for the treatment of physical conditions.").

Congressional activity since the passage of the ADA indicates that Congress does not read the ADA to require parity of coverage for mental and physical disabilities. When Congress considered the Mental Health Parity Act (MHPA) (passed as an amendment to the Health Insurance Portability and Accountability Act of 1996 (HIPAA)), an MHPA co-sponsor remarked that it was "a compromise to *begin* down the path of parity and nondiscrimination for the mentally ill people in this country who have health insurance." 142 Cong. Rec. S9917 (daily ed. Sept. 5, 1996) (statement of Sen. Domenici) (emphasis added). The legislation includes a provision that prohibits employers from imposing lifetime or annual limits on mental health benefits when they impose no such limits for physical health benefits. The provision, however, exempts employers whose costs would increase by more than one percent as a result of the new coverage mandate. *See* 42 U.S.C. § 300gg–5(1)–(2) (Supp.1998). It is important that neither the MHPA nor the HIPAA regulate disability income insurance. *See Parker,* 121 F.3d at 1018. All of this suggests that Congress does not believe that the ADA already mandates equal treatment in benefits coverage for mental and physical disabilities.

■ Everything that we have considered—from pre-ADA Supreme Court cases on the Rehabilitation Act to post-ADA congressional activity—leads us to one conclusion: the ADA does not require

South Carolina to provide the same level of benefits for mental and physical disabilities in its long-term disability plan for state employees.[1]

### B.

Rogers contends that even if the ADA does not require parity in coverage for mental disability, he still states a claim under the ADA. He argues that the State—in limiting mental disability benefits to one year—engaged in discriminatory risk classification that lacked actuarial justification.

Rogers' theory begins with the ADA's "safe harbor" provision, section 501(c), a provision actually intended for the protection of those he sues, the plan sponsor and plan administrator. Section 501(c) provides in part that the ADA

shall not be construed to prohibit or restrict . . .

(2) a person or organization covered by this Act from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks *that are based on or not inconsistent with State law* . . . .

42 U.S.C. § 12201 (emphasis added). Rogers goes on to allege that the State, as plan sponsor, and OIS, as plan administrator, have violated a provision of South Carolina insurance law, which prohibits insurers from "discriminat[ing] in favor of individuals between insureds of the same class and risk involving the same hazards." S.C.Code Ann. § 38–55–50 (Supp.1998).[2]

1. Rogers alleged in his complaint (and he continues to say on appeal) that the State's long-term disability plan also violates § 504 of the Rehabilitation Act. He does not provide us with any briefed arguments for maintaining his Rehabilitation Act claim, choosing instead to rely on his ADA argument for support. *See* Brief of Appellant at 4 n.1 ("[P]laintiff's discussion of the analysis under the ADA is applicable to claims asserted under the Rehabilitation Act."). The Supreme Court's Rehabilitation Act decisions, *Traynor v. Turnage* and *Alexander v. Choate,* which we

take as powerful counterweights to Rogers's ADA claim, are even more potent in defeating his Rehabilitation Act claim. *Cf. Modderno v. King,* 82 F.3d 1059 (D.C.Cir.1996). Rogers does not state a claim under § 504 of the Rehabilitation Act.

2. In his brief Rogers says, "To state a claim under the ADA for discrimination in insurance the discriminatory practice must be inconsistent with state law, in this case inconsistent with South Carolina law." Brief of Appellant at 6.

Rogers completes his theory by saying that the plan's risk classification for mental disability violates the ADA because it lacks actuarial support.

 Rogers does not cite any authority, such as an interpretive rule or order of the South Carolina Director of Insurance or a South Carolina court decision, to indicate that Code section 38–55–50 has been violated here. In any event, we do not see a violation of South Carolina law. Section 38–55–50 only prohibits discrimination among those in the "same class and risk involving the same hazards." The coverage of mental disability and physical disability involves different risks with different hazards (or exposure). Accordingly, section 38–55–50 does not prohibit placing mental disability and physical disability in different risk classifications, as the State's long-term disability plan did. Indeed, it has long been standard practice in the insurance business to have separate risk classifications for mental and physical disabilities. Finally, we do not find anything in § 501(c) of the ADA (or anywhere else in the Act) that requires a plan sponsor or administrator to justify a plan's separate classification of mental disability with actuarial data.[3] Rogers does not state a claim.

### III.

We affirm the district court's order dismissing Rogers' complaint for failure to state a claim upon which relief can be granted.

*AFFIRMED*

---

**3.** Section 501(c) of the ADA ends with a statement that the safe harbor provisions "shall not be used as a subterfuge to evade the purposes of subchapter I and III of this chapter." 28 U.S.C. § 12201(c). There maybe an issue as to whether the subterfuge provision applies to Title II. The plain language of the provision suggests that it does not, but Department of Justice regulations assume that it does. *See* 28 C.F.R. § 36.212 (1998).We are not required to deal further with this issue because Rogers does not allege subterfuge in his complaint.